2018 PA Super 143

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GARY L. KRETCHMAR, | |
| Appellant | No. 3409 EDA 2017 |

Appeal from the PCRA Order Entered October 4, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0001190-1987

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

OPINION BY BENDER, P.J.E.:                    **FILED JUNE 1, 2018**

Appellant, Gary L. Kretchmar, appeals *pro se* from the order dismissing, as untimely, his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  Appellant argues that his petition satisfied the retroactive constitutional right exception to the PCRA's timeliness requirements, Section 9545(b)(1)(iii), premised on our Supreme Court's decision in **Commonwealth. v. Burton**, 158 A.3d 618 (Pa. 2017).  He also claims the PCRA court erred by dismissing his petition without a hearing.  After careful review, we affirm.

This Court previously summarized the factual history of Appellant's conviction as follows:

> On October 6, 1981, at approximately 2:00 p.m., Scott Rosenblum was found dead in his apartment in Bensalem Township, Bucks County, Pennsylvania.  The victim suffered three gunshot wounds.  Ballistics tests revealed that a .22 caliber

firearm was used to inflict the wounds. Despite a contemporaneous investigation, which included the questioning of [A]ppellant, the crime was regarded as "unsolved" for many years. However, in January 1987, after a grand jury returned a presentment against [A]ppellant, a criminal complaint was filed charging [him] with criminal homicide. Aware of the action taken against him with respect to the homicide, [A]ppellant subsequently fled Pennsylvania and was ultimately arrested in San Diego, California, in July 1988, on an unrelated matter. Appellant was subsequently extradited to Pennsylvania and ultimately stood trial on, *inter alia*, charges of criminal homicide.

Appellant was convicted in a jury trial of first-degree murder on November 22, 1988, and after a penalty phase hearing was held, a sentence of life imprisonment was imposed. Following sentencing, [A]ppellant filed a post-sentence motion, which was denied on May 25, 1989. Appellant filed a direct appeal to this [C]ourt, which resulted in the affirmance of his judgment of sentence on May 8, 1990. *Commonwealth v. Kretchmar*, 402 Pa. Super. 656, 578 A.2d 38 (1990). Appellant subsequently filed a petition for allowance of appeal with the Pennsylvania Supreme Court, but that petition was denied on April 30, 1991.

On or about April 13, 1992, [A]ppellant filed a motion for post-conviction collateral relief. Appellant's petition was denied on September 15, 1994 and was affirmed on appeal to this [C]ourt on December 29, 1995. A petition for allowance of appeal to the Pennsylvania Supreme Court was granted, *Commonwealth v. Kretchmar*, 545 Pa. 41, 679 A.2d 774 (1996); however, it was later concluded that allowance of appeal had been improvidently granted. *Commonwealth v. Kretchmar*, 547 Pa. 358, 690 A.2d 234 (1997).

Subsequently, [A]ppellant filed two additional petitions under the PCRA, one in 2002 and the other in 2006. Both petitions were denied by the PCRA court and affirmed on appeal.

*Commonwealth v. Kretchmar*, 971 A.2d 1249, 1250 (Pa. Super. 2009) (hereinafter, "*Kretchmar I*").

Appellant filed his next PCRA petition on November 29, 2007. The PCRA court dismissed the petition as untimely on September 15, 2008. This Court

affirmed on April 8, 2009, and our Supreme Court denied allowance of appeal on November 17, 2009.  **See Kretchmar I**, *appeal denied*, 971 A.2d 1249 (Pa. 2009).  Another PCRA petition followed on January 13, 2010, which was dismissed on January 6, 2011.  This Court affirmed on October 25, 2011, and our Supreme Court denied allowance of appeal from that decision on February 22, 2012.  **See Commonwealth v. Kretchmar**, 37 A.3d 1243 (Pa. Super. 2011) (unpublished memorandum) (hereinafter, "**Kretchmar II**"), *appeal denied*, 38 A.3d 823 (Pa. 2012).

Appellant filed the instant *pro se* PCRA petition, his sixth, on May 23, 2017.  On August 15, 2017, the PCRA court issued an order stating its intent to dismiss Appellant's petition pursuant to Pa.R.Crim.P. 907.  Appellant filed a timely response thereto on September 5, 2017.  By order dated October 6, 2017, the PCRA court dismissed Appellant's PCRA petition as untimely.  Appellant filed a timely notice of appeal on October 24, 2017.  He then filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on November 13, 2017, and the PCRA court subsequently issued its Rule 1925(a) opinion on December 15, 2017.

Appellant now presents the following questions for our review:

1. Did the PCRA [c]ourt commit an error of law when it held that the PCRA public record presumption rule announced in … **Burton** does not apply retroactively to Appellant's *pro se* prisoner PCRA petition?

A. Did the state Supreme Court's holding in … **Burton** establish a watershed rule of PCRA procedure for *pro se* prisoner petitioners under the timeliness exception set forth in 42 Pa.C.S.[] § 9545(b)(1)(ii)?

- 3 -

B. Did the state Supreme Court's holding in … ***Burton*** establish a new constitutional right under the timeliness exception set forth in 42 Pa.C.S.[] § 9545(b)(1)(iii)?

2. Did the PCRA [c]ourt abridge Appellant's 14th Amendment Due Process rights when the court dismissed his *pro se* prisoner PCRA petition without conducting a fact based assessment of Appellant's access to the FBI documents; which form the predicate for his timeliness exception claim under 42 Pa.C.S.[] § 9545(b)(1)(ii)?

Appellant's Brief at 3.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, which is facially untimely, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the

Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Appellant first argues that **Burton** created a new constitutional right, or a watershed rule of PCRA procedure, which entitles him to invoke the retroactive constitutional right exception to the PCRA's time bar, Section 9545(b)(1)(iii). He maintains that his previous two PCRA petitions were denied based on application of the public record presumption rule, which, at least for *pro se* petitioners, was abandoned by our Supreme Court in **Burton**. The PCRA court determined that **Burton** did not create any such right, and that our Supreme Court did not indicate that it intended **Burton** to apply retroactively. We agree with the PCRA court.

Our Supreme Court has set forth a two-part test to determine the applicability of Section 9545(b)(1)(iii) to a new decision:

Subsection (iii) of Section 9545 has two requirements. First, it provides that the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or this [C]ourt after the time provided in this section. Second, it provides

that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, *i.e.*, "that court" has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.

***Commonwealth v. Abdul-Salaam***, 812 A.2d 497, 501 (Pa. 2002).

In ***Burton***, our Supreme Court held that the presumption that information which is of public record cannot be deemed "unknown," for purposes of Section 9545(b)(1)(ii), does not apply to incarcerated, *pro se* petitioners. ***Burton***, 158 A.3d at 638. Nowhere in the ***Burton*** decision did our Supreme Court suggest the creation of a new constitutional right, nor did the Court engage in any form of constitutional analysis in reaching that decision. To the contrary, ***Burton*** is a case of statutory construction or, more specifically, it limits the scope of a prior interpretation of the text of Section 9545(b)(1)(ii). In narrowing that prior interpretation, the ***Burton*** Court did not invoke any provisions or rights set forth in the Pennsylvania or Federal Constitutions. Indeed, there is not a single reference to either Constitution in the opinion.

Instead, the ***Burton*** Court grounded its decision on two precepts. First, the ***Burton*** Court determined that "the application of the public record presumption to *pro se* prisoners is ***contrary to the plain language of subsection 9545(b)(1)(ii)***[.]" ***Id.*** (emphasis added). Second, the Court found that the prior interpretation "was imposed without any apparent

- 6 -

consideration of a *pro se* prisoner's actual access to information of public record." *Id.*  Thus, the **Burton** decision was based on the plain text of Section 9545(b)(1)(ii), and a common sense understanding that incarcerated PCRA petitions do not have *carte blanche* access to information in the public domain.

Moreover, the **Burton** decision did not constitute a watershed rule of criminal procedure.

> New rules of procedure … generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.  Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."  That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "without which the likelihood of an accurate conviction is seriously diminished."  This class of rules is extremely narrow….

**Schriro v. Summerlin**, 542 U.S. 348, 352 (2004).

Here, the procedural rule in question is not a rule of criminal procedure, as the "PCRA system is not part of the criminal proceeding itself, but is, in fact, civil in nature."  **Commonwealth v. Haag**, 809 A.2d 271, 284 (Pa. 2002).  Thus, changes to PCRA procedure do not affect "fundamental fairness and accuracy of *the criminal proceeding.*"  **Schriro**, 542 U.S. at 352 (emphasis added).  Thus, we hold that **Burton** did not establish a new constitutional right nor a watershed rule of criminal procedure.  Consequently, there is no need to address whether "the right 'has been held' by 'that court'

to apply retroactively." ***Abdul-Salaam***, 812 A.2d at 501. Accordingly, Appellant's first claim is meritless.

Next, Appellant asserts that the PCRA court erred by not conducting a hearing to assess his ability to access certain FBI documents for purposes of the timeliness exception set forth in Section 9545(b)(1)(ii). Notably, this is not the first time that Appellant has attempted to seek collateral relief based on these same documents. As Appellant acknowledges, he received the documents in question while litigating "his fourth PCRA action," which concluded in 2009. Appellant's Brief at 27. Appellant's fourth PCRA petition was addressed by our decision in ***Kretchmar I***. Appellant then filed his fifth PCRA petition on January 13, 2010, which was the matter at issue in ***Kretchmar II***. Therefore, a discussion of our decisions in ***Kretchmar I*** and ***Kretchmar II*** is necessary to understand the nature of Appellant's claim.

***Kretchmar I*** concerned Appellant's fourth petition for post-conviction relief, filed on November 29, 2009, in which he sought to challenge his conviction based on forensic evidence used in his case known as Comparative Bullet Lead Analysis ("CBLA"). ***Kretchmar I***, 971 A.2d at 1251. Utilizing CBLA, "FBI Agent John Riley testified" during Appellant's trial "that the bullets extracted from Mr. Rosenblum's body matched in elemental composition those found in the half-empty box discovered in Mr. Rosenblum's apartment creating a high likelihood that they came from the same manufacturing run." ***Id.*** at 1252. Subsequently, in 2004, the National Research Council of the National Academies ("NAS") issued a study assessing "the reliability of the science of

CBLA and its usefulness as a forensic evidentiary tool[.]" ***Id.*** Contemporaneously, "a former chief metallurgist for the FBI, William Tobin, offered public criticism of CBLA." ***Id.***

> A couple of years later, CBS News, through their weekly news magazine show "60 Minutes," broadcast[ed] a feature on the FBI's usage of CBLA evidence entitled "Evidence of Injustice," and contended that it was suspect as a forensic evidentiary tool. Indeed, the CBS spot suggested it was "junk science." The 60 Minutes piece relied heavily upon the assertions of Mr. Tobin, who was highly critical of CBLA evidence. The Washington Post further reported on CBLA evidence and questioned the evidentiary value of the forensic tool. It appears that sometime after the NAS issued its report, the FBI discontinued CBLA. Nevertheless, the above two reports spurred the FBI to issue a press release dated November 17, 2007, wherein John Miller, FBI Assistant Director for Public Affairs, is quoted as saying:
>
> > Recently, joint reporting by the Washington Post and CBS News brought to our attention concerns that our messages on the discontinuation of bullet lead analysis were not clear enough and getting to the right people.... Press Release: FBI Laboratory to Increase Outreach in Bullet Lead Cases, 11/17/07.

***Id.*** at 1254 (footnotes omitted).

In the PCRA petition at issue in ***Kretchmar I***, Appellant "predicated his substantive PCRA claim entirely upon the internal findings of the FBI that its personnel 'had made mistakes in handling bullet lead testimony and should have done more to alert defendants and the courts.'" ***Id.*** at 1254–55. Essentially, Appellant asserted that the FBI's statement, and contemporaneous news reports in November of 2007, contained facts which were previously unknown to the general public and, therefore, provided a basis for him to invoke the PCRA timeliness exception set forth in Section

9545(b)(1)(ii) (permitting an untimely PCRA petition when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence").

In *Kretchmar I*, this Court determined that Appellant's PCRA petition was untimely because, "what [A]ppellant contends was not known until November 17, 2007, was, in the very least, quite inferable from the original NAS report published in 2004." *Id.* at 1256. Arguably, that particular aspect of the *Kretchmar I* decision was premised on the rule later rejected in *Burton*; that is, that Appellant was presumed to have been capable of discovering the 2004 NAS report at an earlier time because it was a matter of public record.

Nevertheless, the *Kretchmar I* Court then conducted an alternative analysis, addressing Appellant's claim on the merits, and ultimately concluding that "the CBLA testimony offered in [A]ppellant's trial was not misrepresentative" of the limitations of the CBLA science. *Id.* Specifically, the *Kretchmar I* Court found:

> The whole of Agent Riley's testimony conveys the limited evidentiary value of the CBLA analysis. Agent Riley admitted that there could be a hundred thousand bullets with the same composition as the ones in question here. This certainly conveys the possibility of a random match. Agent Riley stressed that his analysis revealed that the bullet fragments found in Mr. Rosenblum's body "could have come" from the same box of ammunition found at Mr. Rosenblum's residence. In plain language, this choice of words clearly conveys a probability far less than certainty. In contrast, the CBS 60 Minutes spot, using the example of a defendant convicted of murder, Lee Wayne Hunt,

demonstrates some of the overreaching CBLA testimony which is at the heart of the controversy:

> For years, the FBI believed that lead in bullets had unique chemical signatures, and that by breaking them down and analyzing them, it was possible to match bullets, not only to a single batch of ammunition coming out of a factory, but to a single box of bullets. And that is what the FBI did in the case of Lee Wayne Hunt, tying a bullet fragment found where the murders took place to a box of bullets the prosecutors linked to Hunt.

http://www.cbsnews.com/stories/2007/11/16/60minutes/main3 512453.shtml.

> In the present case, Agent Riley did not testify that his findings proved conclusively that the bullet fragments were from the same box of ammunition and certainly left open the possibility of random matches. Thus, Agent Riley did not engage in the form of unfounded representation that was at the heart of the NAS study/report or the 60 Minutes and Washington Post pieces, and also at the heart of the press release [A]ppellant refers to in his current PCRA petition.

***Kretchmar I***, 971 A.2d at 1257.

In ***Kretchmar II***, Appellant reformulated the same claim he raised in ***Kretchmar I***, but instead of relying on the 2004 NAS study, or the subsequent news coverage of the CBLA issue, he sought to use the internal FBI reports he received in 2009 as the predicate for invoking Section 9545(b)(1)(ii).[1] We

---

[1] These documents

> include[d] a report by the United States Department of Justice, dated April 15, 1997, a memorandum by the FBI, dated May 17, 1999, and five letters between the FBI and the Bucks County District Attorney's Office, dated April 24, 2008, through July 17, 2009. … ***See*** … Appellant's Amended PCRA Petition, 7/12/10, Appendices B, C, and G…. The 1997 report, which is over 500 pages long, provides information regarding an FBI "investigation into laboratory practices and alleged misconduct in explosives-

held that Appellant "failed to prove the newly-discovered evidence exception because he failed to allege *or* prove any new facts." *Id.* (emphasis added).

> Specifically, Appellant failed to prove that the five letters dated December 30, 2008, through July 17, 2009, present new facts that have not been previously considered. In 2009, this Court addressed the propriety of the same FBI agent's testimony and held that it was not misrepresentative and, thus, did not deny Appellant a fair and impartial trial. []*Kretchmar* [*I*], 971 A.2d [at] 1257…. Furthermore, we are unable to discern how the other two documents, the 1997 report and the 1999 memorandum, relate to Appellant's case. Appellant has not demonstrated the relevance of the documents by pointing to a particular section of the 517-page report. Similarly, Appellant failed to challenge any specific portion of the forensic work performed in his case or to identify the person who conducted that forensic analysis. Appellant even neglects to mention whether the forensic work in question was used at his trial. Accordingly, we agree with the PCRA court's conclusion that "[Appellant] has not met his burden in establishing th[e newly-discovered evidence] timeliness exception." PCRA Court Opinion, 4/8/11, at 8.

*Kretchmar II*, No. 208 EDA 2011, unpublished memorandum at 9-10.

Instantly, Appellant is attempting to make yet another challenge to Agent Riley's CBLA-related testimony. On this occasion, however, he does not even offer newly-discovered **documents**, much less newly-discovered **facts**.

---

> related and other cases." Appellant's Amended PCRA Petition, 7/12/10, Appendix B. The 1999 memorandum summarizes the findings in the 1997 report. Appellant's Amended PCRA Petition, 7/12/10, Appendix C. The five letters refer to an FBI agent's testimony regarding the comparative bullet-lead analysis conducted in Appellant's case.

*Kretchmar II*, No. 208 EDA 2011, unpublished memorandum at 9 (Pa. Super. filed October 25, 2011).

Instead, Appellant is attempting to utilize the ***Burton*** decisions as a jurisdictional hook by which to relitigate his previous two PCRA petitions. And, although Appellant claims his previous petitions were denied exclusively by application of the rule abandoned in ***Burton***, that is simply not the case. In ***Kretchmar I***, this Court also denied his CBLA-related claim on an alternative basis, concluding that Agent Riley's testimony was not undermined by the subsequent criticisms of CBLA in the CBS and Washington Post news reports. In ***Kretchmar II***, this Court determined that the additional documents produced by Appellant did not present any new facts to undermine Agent Riley's testimony, since Appellant failed to identify which parts of those documents constituted relevant, newly-discovered facts. The ***Kretchmar II*** Court also found that Appellant failed to identify which part of Agent Riley's analysis was challenged by the new documents. Thus, it is clear that Appellant's prior CBLA-related claims, raised in two separate PCRA petitions, were not exclusively denied on the basis for the rule circumscribed in ***Burton***.

In any event, Appellant's current PCRA petition presents no new documents, no new evidence, and, most critically, no new facts. Accordingly, his claims fails to meet the requirements of Section 9545(b)(1)(ii) on its face. The only circumstance that has changed since Appellant's previous PCRA petition is our Supreme Court's issuance of the ***Burton*** decision. However, judicial decisions do not constitute new "facts" for purposes of the newly-discovered evidence exception set forth in Section 9545(b)(1)(ii). ***See Commonwealth v. Watts***, 23 A.3d 980, 986-87 (Pa. 2011). New legal

decisions can only overcome the PCRA's timeliness requirements in the context of Section 9545(b)(1)(iii). Accordingly, we conclude the PCRA court did not err when it dismissed Appellant's PCRA petition without a hearing. Appellant did not plead newly-discovered facts so as to properly invoke Section 9545(b)(1)(ii) and, therefore, no evidentiary hearing was required to determine if Appellant exercised due diligence in the discovery of those facts.

Order **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/18