J-S84024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEYON DURANE BOYD :
:
Appellant : No. 1999 EDA 2015

Appeal from the PCRA Order October 24, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005028-2008

BEFORE: BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.: **FILED APRIL 18, 2019**

Keyon Durane Boyd appeals, *nunc pro tunc*, from the order entered October 24, 2014, in the Philadelphia County Court of Common Pleas, dismissing his first petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Boyd seeks relief from the sentence of life imprisonment imposed on April 20, 2009, following his jury conviction of first-degree murder and related offenses for the June 2006 shooting death of Stephen Rochard. On appeal, Boyd contends the PCRA court erred by dismissing his petition without first conducting an evidentiary hearing with respect to his claims of direct appeal counsel's ineffectiveness. For the reasons below, we affirm.

The facts underlying Boyd's conviction were summarized by a panel of this Court in the memorandum decision affirming his judgment of sentence on direct appeal:

The evidence at trial established that at 12:20 a.m., on June 27, 2006, the victim, Stephen Rochard, and three confederates walked down the 1800 block of Filmore Street toward a group of men playing dice on a porch. Rochard and his cohorts were all armed with guns and wore black clothing with black masks or bandanas covering their faces. Rochard and his friends opened fire when they were halfway down the block. Terrell Boyd, [Boyd's] cousin, who was standing in a parking lot across the street, heard the gunshots and believed the men were firing at him. Boyd pulled out a 9-millimeter handgun and returned fire in the direction of the gunmen, emptying his clip of its ten or eleven bullets before fleeing to a friend's house. One of the dice players, Brian Garland, also returned fire but then, with his gaming companions, fled the scene.

One of the bullets fired by either Boyd or Garland struck Rochard in the left buttock, causing him to fall face-down, and drop his gun, a .40 caliber black-and-silver handgun. Rochard screamed "don't leave me," to his cohorts, who fled the scene. [Boyd], who was not one of the dice players and had not been involved in the incident, boasted to his friends and family members that he walked over to Rochard and asked him if he was okay. [Boyd] then picked up Rochard's gun and shot him three times in the back. Two of the bullets went into Rochard's lungs, causing fatal wounds.

[Boyd's cousin Terrell], who was hiding at a friend's house, received a call from Justin Heard, one of the dice players, telling him to return to the parking lot. [Terrell] retuned to the lot, where Heard was "hanging out" with Garland, Christopher Knight (another of the dice players) and [Boyd]. [Boyd] bragged to them about killing Rochard with his own weapon and showed them the .40 caliber black-and-silver handgun.

Less than one week later, [Boyd] bragged to another friend, Dion Fowler, about killing Rochard. [Boyd] showed the .40 caliber black-and-silver handgun to Fowler and offered to sell or trade it to him. When they could not reach a deal, [Boyd] and [Terrell] kept the gun in a "hiding spot" until [Terrell] arranged to sell it to someone in New Jersey for $350.00 or $400.00.

***Commonwealth v. Boyd***, 29 A.3d 847 [2577 EDA 2009] (Pa. Super. 2011)

(unpublished memorandum at 4-6).

Boyd was arrested and charged with first-degree murder, criminal conspiracy, carrying a firearm without a license, and possession of an instrument of crime.[1] On April 3, 2009, a jury convicted him of all charges, with the exception of criminal conspiracy. Boyd was sentenced, on April 20, 2009, to a mandatory term of life imprisonment for the murder conviction, and a concurrent term of one to two years' imprisonment for each of the remaining offenses. Boyd's judgment of sentence was affirmed by a panel of this Court,[2] and the Pennsylvania Supreme Court denied his petition for allowance of appeal. *See Boyd*, *supra*, 29 A.3d 847 (unpublished memorandum), *appeal denied*, 31 A.3d 290 (Pa. 2011).

On February 14, 2012, Boyd filed a timely, *pro se*, PCRA petition, challenging direct appeal counsel's ineffectiveness for failing to consult with him regarding the issues raised on direct appeal.[3] The petition sat dormant for two years until Boyd filed a *pro se* motion for leave to file an amended petition on January 21, 2014, claiming his due process and equal protection

---

[1] *See* 18 Pa.C.S. §§ 2502, 903, 6107, and 907, respectively.

[2] On direct appeal, Boyd challenged the weight and sufficiency of the evidence supporting his convictions, as well as the admission of evidence regarding his intention to provide information to federal authorities concerning other crimes. *See Boyd*, *supra*, 24 A.3d 847 (unpublished memorandum at 2).

[3] Boyd noted he did not want an attorney appointed to litigate his petition, but rather, he wanted to proceed *pro se*. *See* Motion for Post Conviction Relief, 2/14/2012, at 7.

rights had been violated by the delay in his proceedings. Thereafter, on March 6, 2014, appointed counsel filed an amended petition,[4] in which he challenged the ineffective assistance of direct appeal counsel. In response, the Commonwealth filed a motion to dismiss the petition on June 23, 2014, arguing that Boyd's claims were meritless. By order entered October 24, 2014, the PCRA court dismissed the petition without first conducting an evidentiary hearing.[5] Boyd filed an untimely, *pro se* notice of appeal on February 16, 2015, which this Court quashed on April 9, 2015. *See* 562 EDA 2015. Thereafter, on April 21, 2015, PCRA counsel filed a second petition, seeking reinstatement of Boyd's appellate rights, which the court granted by order entered June 1, 2015. This timely *nunc pro tunc* appeal followed.

In both issues raised on appeal, Boyd argues the PCRA court erred in failing to hold an evidentiary hearing on his claims that direct appeal counsel rendered ineffective assistance. "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Kretchmar*, 189 A.3d 459, 462 (Pa. Super. 2018) (citation omitted), *appeal denied*, 198 A.3d 1046 (Pa. 2018). Moreover,

> [t]he PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine

---

[4] It is unclear from the record when PCRA counsel was appointed.

[5] The PCRA court did not first issue Boyd notice of its intent to dismiss the petition as required by Pa.R.Crim.P. 907.

issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings." "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing."

***Commonwealth v. Roney***, 79 A.3d 595, 604–605 (Pa. 2013), *cert. denied*, 135 S.Ct. 56 (U.S. 2014).

Furthermore, where, as here, the defendant alleges counsel rendered ineffective assistance, we note:

"In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" ***Commonwealth v. Payne***, 794 A.2d 902, 905 (Pa. Super. 2002), *quoting* 42 Pa.C.S.A. § 9543(a)(2)(ii). When considering such a claim, courts presume that counsel was effective, and place upon the appellant the burden of proving otherwise. ***Id.*** at 906. "Counsel cannot be found ineffective for failure to assert a baseless claim." ***Id.***

To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him. ***Commonwealth v. Allen***, 833 A.2d 800, 802 (Pa. Super. 2003).

***Commonwealth v. Michaud***, 70 A.3d 862, 867 (Pa. Super. 2013). "To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." ***Commonwealth v. Mason***, 130 A.3d 601, 618 (Pa. 2015).

- 5 -

In his first issue, Boyd argues direct appeal counsel was ineffective for failing to "raise and brief the issue of [trial court] error in permitting hypothetical questions not based on facts in [evidence]." Boyd's Brief at 9. Boyd's claim focuses on questions posed by the prosecutor to the Commonwealth's firearms expert.

It is well-settled that a party may ask an expert a hypothetical question so long as "there is evidence of record supporting the hypothetical." *Commonwealth v. Galvin*, 985 A.2d 783, 801 (Pa. 2009), *cert. denied*, 559 U.S. 1051 (2010). However, an expert's opinion may not be based upon conjecture or guesswork. *See id. Accord Commonwealth v. Petrovich*, 648 A.2d 771, 772 (Pa. 1994) ("[A]n expert may give an opinion in response to a hypothetical, provided the set of facts assumed in the hypothetical is eventually supported by competent evidence and reasonable inferences derived therefrom[.]").

In the present case, Boyd insists two hypothetical questions the prosecutor posed to the firearms expert were based on facts not in evidence. *See* Boyd's Brief at 9. After the expert testified extensively regarding the ballistics evidence recovered from the scene, including the number and location of fired 9mm and .40-caliber cartridge cases, the Commonwealth asked the expert a hypothetical question involving the potential locations of the various shooters at the time when the weapons were fired. *See* N.T., 4/1/2009, at 164-166. Defense counsel objected to the question, insisting there was no evidence supporting the factual scenario the Commonwealth

described.  ***See id.*** at  166.  The trial court, however, overruled the objection, stating:

> The purpose of the hypothetical is just that.  He may answer the hypothetical, assuming he understands it, and you may ask a hypothetical that fits the facts that you see.

***Id.***  The court also instructed the jury:

> But, ladies and gentlemen – that's why, ladies and gentlemen, what the expert says is not necessarily correct.  You are the fact finders.  You're the ones that heard all of the evidence and looked at the chart, heard where the bullets are, and it's up to you to determine in the end what the facts are.

***Id.***  Thereafter, the expert was permitted to answer the question, and testified the physical evidence at the scene was "consistent" with the factual scenario presented by the Commonwealth.  ***Id.*** at 167.  Later, the Commonwealth posed a second hypothetical question concerning whether the "grouping" of the gunshots wounds on the victim's back shoulder area was consistent with him having sustained the injury while lying on the sidewalk.  ***Id.*** at 171.  Again, defense counsel objection, and the trial court permitted the expert to answer.  Thereafter, the expert testified, "It would be consistent." ***Id.*** at 172.

Boyd contends the trial court applied the "wrong legal standard" when it stated the expert could answer the hypothetical question as long as he understood it.  Boyd's Brief at 9.  We agree.  A hypothetical question is permitted only if the facts provided in the hypothetical are reflected in the evidence.  ***See Galvin***, ***supra***.   The witness's comprehension of the hypothetical is not the proper gauge for admissibility.

Nevertheless, we agree with the PCRA court's determination that Boyd is entitled to no relief. The court found the facts posed in the first hypothetical were based upon "the trial testimony of Terrell Boyd and the prior police statement of Dion Fowler concerning the positions of the various gunmen and the number of shots fired at various places[.]" PCRA Court Opinion, 10/4/2017, at 6-7. Our review of the trial transcript supports the court's conclusion. *See* N.T., 3/31/2009, at 138-150; 4/1/2009, at 20-21. Although Boyd insists the facts in the hypothetical were not in evidence, he provides no further explanation or citation to the record. With regard to the second hypothetical, we agree with the PCRA court that the question was based upon the autopsy photographs, which depicted the location of the bullet wounds in the victim's back shoulder area. *See* PCRA Court Opinion, 10/4/2017, at 7. The prosecutor asked the firearms expert if the wounds were consistent with shots being fired by a person standing while the victim was lying on the sidewalk. *See* N.T., 4/1/2009, at 171. This evidence was consistent with the Commonwealth's version of the events. *See* N.T., 3/31/2009, at 155-156 (Terrell Boyd's testimony that Boyd told him he picked up the victim's gun as the victim lay wounded on the sidewalk, and shot him); N.T., 4/1/2009, at 20-21 (Fowler's statement that Boyd told him he shot the wounded victim, who was lying on the sidewalk). Boyd failed to establish counsel's ineffectiveness because he did not demonstrate: (1) his underlying issue had arguable merit, (2) direct appeal counsel had no reasonable basis for failing

to raise this meritless claim on direct appeal, and (3) he was prejudiced as a result. Therefore, no relief is warranted.

Next, Boyd contends appellate counsel was ineffective for failing to raise a claim of prosecutorial misconduct on direct appeal. Specifically, he maintains the prosecutor personally vouched for the credibility of witness Terrell Davis during closing arguments, and improperly testified as to what occurred during their pretrial prep session. *See* Boyd's Brief at 11-12.

It is well-established that

statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict."

*Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016) (quotation omitted), *appeal denied*, 145 A.3d 724 (Pa. 2016). "Although a prosecutor may comment on the credibility of the defendant or other witnesses, it is improper for a prosecutor to express a **personal belief** as to their credibility." *Commonwealth v. Sanchez*, 82 A.3d 943, 981 (Pa. 2013) (emphasis supplied), *cert. denied*, 135 S.Ct. 154 (U.S. 2014). However, "[i]f defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility." *Commonwealth v. Chmiel*, 889 A.2d 501, 544 (Pa. 2005), *cert. denied*, 549 U.S. 848 (2006). Accordingly, "a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the

defense in summation." ***Jaynes***, ***supra***, 135 A.3d at 615, *citing* ***Chimel***, ***supra***.

By way of background, Boyd's claim focuses on a discrepancy between Terrell Boyd's statement to police, and his subsequent trial testimony, concerning the type of gun Brian Garland shot on the night in question. In his police statement, Terrell claimed Garland had a .40 caliber weapon. ***See*** N.T., 3/31/2009, at 236. However, at trial, he testified he did not know for sure the type of gun Garland had. ***See id.*** at 236-237. Later, Detective John McNamee, who took Terrell's police statement, explained that during a pretrial prep session, Terrell clarified "he believed [the .40 caliber gun] was probably the type of gun that [Garland] carried, but had not seen him in possession of that gun or did not know what type of gun he was in possession of when this incident occurred." N.T., 4/2/2009, at 101-102. The detective testified Terrell said, "[h]e did not know for certain" that Garland was shooting a .40 caliber weapon on the night in question. ***Id.*** at 102.

During the defense closing argument, counsel implied the detective and the prosecutor induced Terrell to change his statement:

> They have a theory of the case and they say – I'm not saying anybody did anything wrong, but, by the way, are you sure he had a .40, [Garland], are you sure? Because there is no evidence of .40 fired cartridge casings here. There is nothing wrong with telling him that. What did you think … Terrell Boyd is going to do? Geez, I don't know; maybe I must have been wrong. And he knows what they want him to say. It's easy. You can tell a witness what to say without telling them. Simple as that. A week before trial, guess what? Changes his mind; he knows. You know how to ask questions to a witness. That's what I suggest to you

happened, and he knew what he had to say to make sure he gets his deal.

*Id.* at 152-153. The prosecutor responded to defense counsel's allegation as follows:

Now, there is a suggestion that [defense counsel] made that Terrell Boyd, when he had that prep last week with me and Detective McNamee and the DEA agent, that they somehow molded his testimony to the fact that in his statement, he said that Brian Garland had a .40 caliber [but that n]o .40 caliber was fired down here. There is a suggestion that somehow [Terrell] realized that and molded his testimony.

Folks, let me explain to you the prep session. I had never met Terrell Boyd. I can't call a witness to testify in a case –

[Defense Counsel]: I object to what happened.

THE COURT: This is argument, ladies and gentlemen. Counsel may argue it, but you may only consider the evidence that was testified to here in the courtroom from the detective concerning the prep session and who was there.

But argument is permissible. You may draw any inferences you wish from that, but you're the fact finders and only the facts as you find them should be considered.

[Prosecutor]: The purpose of the prep session was for me to speak to [Terrell], to go over his – to ask him, Terrell, what happened that night, and go over the statement that he gave and ask questions about those – the statement, so that I have some idea of what the witness is going to say when I call them to testify. Because, frankly, what kind of lawyer would I be if I called a witness to testify that I had never spoken to before and hadn't gone over the statement with and didn't know what he was going to say?

Now, I knew that there were certain things in his statement that he needed to clarify, not the least of which was when he says Brian Garland had a .40 caliber gun. You heard Detective McNamee said that was addressed at the prep. He was asked why did you think that Brian had had a gun? Did you actually see the gun? Do you know it to be a .40-caliber gun? Are you positive

- 11 -

about that? … Detective McNamee told you that Terrell Boyd explained that the reason he believed Brian Garland had a gun, a .40 caliber, was because that's the type of gun that Brian was known to carry. It was something that he had known Brian to have before. It was something that he assumed Brian had that night.

*Id.* at 174-176.

Considering the prosecutor's closing argument in the context of the entire trial, we conclude Boyd failed to establish prosecutorial misconduct. The prosecutor did not personally vouch for the credibility of either Terrell Boyd or Detective McNamee, nor did he "explain what he personally perceived as to what occurred at the prep session[.]" Boyd's Brief at 12. Rather, the prosecutor rebutted defense counsel's claim that Terrell was implicitly coerced to clarify his statement during the pretrial prep session, by referring to Detective McNamee's testimony. The prosecutor did not state that either the detective or Terrell were being truthful, nor did he provide his own account of Terrell's clarification at the prep session. Therefore, because Boyd has failed to prove his allegation of prosecutorial misconduct is arguably meritorious, his second ineffectiveness claim fails as well. ***See Michaud***, ***supra***.

Consequently, we agree with the assessment of the PCRA court that Boyd failed to set forth sufficient facts demonstrating counsel's purported ineffectiveness to justify an evidentiary hearing. As such, we affirm the order of the PCRA court dismissing Boyd's petition without first conducting a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/18/19