J-S38007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GENOA TRUSTY | : | |
| | : | |
| Appellant | : | No. 221 EDA 2022 |

Appeal from the PCRA Order Entered December 14, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0005214-2016

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED MARCH 29, 2023**

Genoa Trusty ("Trusty") appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

Between 2010 and 2013, Trusty sexually abused T.B. ("the victim"), his children's half-sibling, on multiple occasions beginning when the victim was nine years old.  The victim finally revealed the abuse to her grandmother, and the police arrested Trusty.[2]  Trusty rejected the Commonwealth's plea offer of five to ten years of imprisonment, and Trusty elected to proceed to a jury trial. The jury convicted Trusty of corruption of minors, involuntary deviate sexual intercourse, and two counts of aggravated indecent assault of a child.[3]  The

_____

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

[2] Trusty had prior convictions for corruption of minors relating to a different child.

[3] The jury found Trusty not guilty of two counts of rape of a child.

trial court sentenced Trusty to an aggregate sentence of one hundred and twenty-four (ten years and four months) to three hundred and twenty-four months (twenty-seven years) of imprisonment. This Court affirmed Trusty's judgment of sentence. *See Commonwealth v. Trusty*, 194 A.3d 678 (Pa. Super. 2018) (unpublished memorandum).[4]

Trusty filed a timely PCRA petition alleging that trial counsel was ineffective, *inter alia*, for failing to prepare the case for trial and for failing to interview and call witnesses. *See* PCRA Petition, 8/2/19, at 4-5 (unnumbered). On April 30, 2021, and September 13, 2021, the trial court, who later denied the PCRA petition that is the subject of this appeal, held a bifurcated evidentiary hearing on the petition at which it heard the testimony of Trusty, his sister, Esmira ("Esmira"),[5] his mother, Carla ("Carla"), and trial counsel, James Marsh, Esquire ("Attorney Marsh"). Trusty testified that Attorney Marsh never discussed the case with him before trial and failed to convey a plea offer of five-to-ten years of imprisonment. *See* N.T., 4/30/21, at 14-16. He testified that Attorney Marsh never came to see him in prison before the preliminary hearing, wrote to him, telephoned him, or gave him any information about the defense. *See id*. at 31-38. Trusty also testified that Attorney Marsh did visit him after the preliminary hearing but would not

---

[4] Trusty did not file a petition for allowance of appeal or petition for a writ of *certiorari*.

[5] The trial transcript spells Trusty's sister's name "Esmira." Trusty's appellate brief gives his sister's name as "Asmyra." *See* Trusty's Brief at 10.

listen to him or discuss trial strategy. *See id*. at 17-22, 31-38. Trusty testified that he did not have a chance to tell Attorney Marsh the name of his witnesses or that he had a physical injury limiting his mobility at the time the alleged abuse began, and he did not discuss with Attorney Marsh whether he should testify. *See id*.

On cross-examination at the PCRA hearing, Trusty testified that he would never have accepted the plea offer and did not want to request a lower plea offer. *See id*. at 42-45. Trusty confirmed that the trial court conducted an extensive pre-trial colloquy concerning the five-to-ten-year plea offer on November 7, 2016, during which he testified that Attorney Marsh had discussed the plea, discovery, and trial strategy with him, and Attorney Marsh had answered any questions to his satisfaction. *See id*. at 42-46. Trusty also acknowledged that before trial Attorney Marsh had successfully litigated an *in limine* motion concerning text messages, and that after an extensive colloquy at trial, he told the court he did not want to testify, was satisfied with counsel's representation, and had no questions. *See id*. at 47-48, 51-53.

Attorney Marsh testified at the PCRA hearing that he visited Trusty in prison having previously sent him the criminal complaint, affidavit of probable cause and discovery, and discussed trial strategy with Trusty. Attorney Marsh testified that Trusty never mentioned any possible witnesses who could testify on his behalf, and that no family member had told him prior to trial they wanted to testify. *See id*. at 64-74. Attorney Marsh also testified that he advised Trusty not to testify. *See id*. at 104-06.

At the PCRA hearing, Esmira testified that in late 2009, she and her sister and several other people lived with Trusty in a small house where the victim did not live. She testified that it would have been impossible for the victim to be alone with Trusty in the house for him to be able to abuse her. *See* N.T., 9/3/21, at 20-22, 25, 31. She also said her mother, Carla, was prepared to testify about Trusty's good character. *See id*. at 25-27. On cross-examination, Esmira testified that she knew that the victim had texted a cousin repeatedly about Trusty's abuse, and that during the trial she, Esmira, had written and issued profane posts about the prosecutor and the trial. *See id*. at 33, 35-38.[6] PCRA counsel proffered that Carla would testify that Trusty could not have been alone with the victim in the house where the abuse of which Trusty was convicted occurred. *See id*. at 47. Carla testified that Attorney Marsh told her he did not need her to testify. *See id*. at 51-54. The parties stipulated that PCRA counsel's paralegal would testify that she did not find a prison record of a visit from Attorney Marsh to Trusty during "the duration of his trial case." *See id*. at 6-7.

At the conclusion of the hearing, the court invited the parties to submit briefs, which they later did. On December 13, 2021, the court denied Trusty's PCRA petition. Trusty filed a timely notice of appeal, and he and the trial court complied with Pa.R.A.P. 1925.

---

[6] Among other statements, Esmira called the Delaware County District Attorney a "dickhead," and referred to the trial prosecutor as a "sick-looking bitch," and expressed a desire that she "choke on her coffee." *See* N.T., 9/13/21, at 38.

Trusty presents the following issues for our appellate review, which we have reordered for ease of disposition:

1) Whether the court below erred in denying [Trusty's] petition for post-conviction collateral relief since he proved by a preponderance of the evidence that trial counsel was ineffective by failing to properly communicate with [Trusty] during the course of representation?

2) Whether the court below erred in denying [Trusty's] petition for post-conviction collateral relief since he proved by [a] preponderance of the evidence that trial counsel was ineffective by failing to properly prepare for trial?

Trusty's Brief at 5 (italics omitted).

This Court's standard of review regarding an order denying a PCRA petition is whether the determination of the PCRA court is supported by the evidence of record and free of legal error. *See Commonwealth v. Kretchmar*, 189 A.3d 459, 462 (Pa. Super. 2018). We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. *See Commonwealth v. Dozier*, 208 A.3d 1101, 1103 (Pa. Super. 2019). We grant no such deference to the PCRA court's legal conclusion, over which our we exercise a *de novo* standard of review and a plenary scope of review. *Id*.

To prevail on a claim of ineffective assistance of counsel, an appellant must prove that:

the underlying claim is of arguable merit, counsel's performance lacked a reasonable basis, and counsel's ineffectiveness caused him prejudice. Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability

- 5 -

that, but for counsel's error, the outcome of the proceeding would have been different. . ... Failure to establish any prong of the test will defeat an ineffectiveness claim.

***Commonwealth v. Smith***, 995 A.2d 1143, 1150-51 (Pa. 2010) (internal citations and quotations omitted). Counsel is presumed effective. ***See Commonwealth v. Hancharik***, 633 A.2d 1074, 1078 (Pa. 1993).

Trusty's first claim asserts trial counsel's failure to communicate effectively through the course of his representation concerning a plea offer and defense strategy. An attorney has a duty to consult with the client regarding important decisions, such as defense strategy. Although that obligation does not require assent to every tactical decision,

certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant . . . has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal. Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.

***Commonwealth v. Brown***, 18 A.3d 1147, 1158 (Pa. 2011), quoting ***Florida v. Nixon***, 543 U.S. 175, 187 (2004) (quotations, parenthetical, and internal citations omitted).

Trusty asserts that he and trial counsel had only brief meetings in court and no opportunity to discuss trial strategy or the plea offer, and that Attorney Marsh did not visit him in prison during the duration of his case, and that he did not consent to Attorney Marsh's trial strategy, all of which he alleges deprived him of the opportunity to participate in his defense.

In its opinion, the PCRA court found that Attorney Marsh sent Trusty the criminal complaint, probable cause affidavit, and discovery. *See* PCRA Court Opinion, 6/6/22, at 13-14. The PCRA found that Trusty and Attorney Marsh had made statements in court prior to trial that expressly contradicted these assertions: both said they had opportunities to discuss trial strategy. The court cited Trusty's agreement with Attorney Marsh's statements that he and Trusty had discussed trial strategies, "had plenty of time to talk about the [plea] offer," and Trusty did not tell Attorney Marsh to seek a lower plea offer. *See id*. at 15-17. The PCRA court also cited Trusty's additional, affirmative assertion that he wanted to go to trial, and his testimony at the PCRA hearing that he never had the intention to accept the plea offer. *See id*. at 18.[7] The PCRA court also noted Attorney Marsh's successful litigation of a pre-trial motion to preclude the admission of some of the victim's text messages. *See id*. at 18-19. From this evidence and Attorney Marsh's successful strategy of obtaining a not guilty verdict on the charges of rape of a child, the PCRA court rejected as meritless Trusty's claim that counsel failed to communicate effectively and prepare for trial. *See id*. at 13-14, 19-22.

We perceive no error in the PCRA court's rejection of Trusty's claims that Attorney Marsh failed to consult with him concerning the plea offer or trial

---

[7] The PCRA court also cited the letters Attorney Marsh sent to Trusty in prison soliciting any questions or concerns he had, to which neither Trusty nor anyone associated with him ever responded. *See* PCRA Court Opinion, 4/6/21, at 19-20, N.T. 4/30/21, 69-70, 73.

strategy. Trusty told the trial court during his pre-trial rejection of the Commonwealth's plea offer that he had discussed the plea offer with counsel, wanted to go to trial and was not interested in soliciting a lower offer; Trusty also testified at the PCRA hearing that he would never have accepted the plea offer. *See* N.T., 4/30/21, at 42-46. Trusty's claim that Attorney Marsh failed to discuss the plea offer with him fails because he cannot show that but for counsel's alleged ineffectiveness, he would have accepted the plea offer. *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Nor do we perceive error in the PCRA court's rejection of Trusty's claim that Attorney Marsh failed to consult with him about trial strategy and did not properly prepare for trial. Trusty repeatedly acknowledged to the trial court that Attorney Marsh **had** consulted with him about trial strategy and, as the trial court notes, Attorney Marsh successfully litigated a motion *in limine* precluding the admission of some of the victim's texts and also obtained an acquittal on the most serious charges. Trusty, accordingly, has failed to prove arguable merit and from counsel's alleged ineffectiveness concerning pre-trial preparation. For these reasons, Trusty is due no relief on his first claim. *See Smith*, 995 A.2d at 1150-51.

Trusty's second issue asserts that trial counsel filed to investigate or interview defense witnesses and present his sister's and his mother's testimony. Counsel has a duty to undertake reasonable investigations, however even where known eyewitnesses exist, counsel is not *per se*

- 8 -

ineffective for failing to investigate them. *See Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009). A claim of ineffectiveness for failing to call a witness requires proof that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the witness's existence; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial that it denied the defendant a fair trial. *See Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007).

Trusty claims that Attorney Marsh knew about his sister and mother; his sister repeatedly contacted Attorney Marsh to tell him that she had important information about the case; and his sister and mother would have provided a first-hand account of the conditions at the home to establish that the abuse could not have occurred there and that the victim was lying.

The PCRA court cited trial counsel's testimony that no member of the family attempted to contact him and that, as a result of his interactions with them at trial, he would not have called them as witnesses. The court also stated that Trusty had offered no proof to corroborate his claims that his family members attempted to contact counsel. The court also concluded that Esmira's profane blogging during the course of the trial called into doubt the notion of calling her as a witness and found that the proposed testimony would not have affected the outcome of the trial. *See* PCRA Court Opinion, 6/6/22, at 31-32.

We do not perceive error in the PCRA court's ruling although we reach the same result for slightly different reasons.[8]  First, Trusty himself testified that he never told counsel that his sister and mother were available as witnesses.  **See** N.T., 4/30/21, at 31-38.  Accordingly, Trusty arguably failed to prove that counsel knew or should have known that they were available to testify.  **See Washington**, 927 A.2d at 599.  Second, to the extent that the witnesses sought to testify that the victim was simply lying, without any proof of that assertion, that is not the proper basis for a finding of ineffective assistance.   **See generally Commonwealth v. Baumhammers**, 92 A.3d 708, 725 (Pa. 2014) (claim of ineffectiveness for failure to call witness lacks merit if the proposed testimony would not have materially aided defendant).  Additionally, Trusty's sister's profane blog attacks on the prosecutor, and her and her mother's obvious bias as his family members, supports the PCRA court's finding that the absence of their testimony did not cause prejudice.  Finally, their proposed testimony about Trusty's good character would have made them subject to cross-examination about his prior convictions for corruption of a different minor. **See Commonwealth v. Van Horn**, 797 A.2d 983, 988 (Pa. Super. 2002) (finding that trial counsel is not ineffective for declining to call character witnesses who could be cross-examined about the

---

[8] We may affirm the court's decision if there is any basis to support it, even if we rely on different grounds to do so.  **See Commonwealth v. Walsh**, 125 A.3d 1248, 1552-53 (Pa. Super. 2015).

defendant's prior convictions).[9]  Thus, there is no basis for us to overturn the

PCRA court's legal conclusion that trial counsel was not ineffective.

      Order affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/29/2023

---

[9] Trusty is correct that in a case where the primary issue is credibility it is helpful to have a witness who is capable of undermining the Commonwealth's witness.  However, his citation of this Court's decision in **Commonwealth v. Matias**, 63 A.3d 807 (Pa. Super. 2013) (*en banc*) is inapposite.  In that case, this Court affirmed a finding of ineffectiveness where the child who alleged two sexual assaults in Matias's basement denied being in Matias's basement at the time of the first assault, and counsel failed to call Matias's daughter, who would have testified credibly that she was in the basement at the time and did not see an assault.  **See id**. at 813.  Here, by contrast, Trusty does not proffer evidence that a witness would testify that they were in the house at the time of the alleged abuse, and the PCRA court found that Trusty's mother and sister would not have made good witnesses.