J-A11042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMEL THOMAS BROWN | : | |
| | : | |
| Appellant | : | No. 891 MDA 2019 |

Appeal from the PCRA Order Entered May 1, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000227-2007

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                          **FILED JUNE 15, 2020**

Appellant, Jermel Thomas Brown, appeals from the order entered in the
Court of Common Pleas of Dauphin County dismissing his petition under the
Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, as untimely.
Appellant contends his petition qualified for a timeliness exception under the
newly-discovered evidence exception at Section 9545(b)(1)(ii) and newly-
recognized constitutional right exception at Section 9545(b)(1)(iii).   We
affirm.

The PCRA court sets forth the pertinent facts and procedural history of
the present matter, as follows:

> Defendant [hereinafter "Appellant"] Jermel Brown was
> charged with robbery, conspiracy, and aggravated assault.
> Following a jury trial held on August 9th and 10th, 2007, Appellant
> was convicted of all charges and sentenced to twenty (20) to forty

_____

[*] Former Justice specially assigned to the Superior Court.

(40) years of imprisonment. Appellant filed a notice of appeal and the Superior Court affirmed his judgment of sentence on June 30, 2008.

On March 8, 2015, Appellant filed a *pro se* PCRA petition. An amended petition was filed by appointed counsel, Kaitlyn Clarkson, Esq., asserting newly discovered evidence. An additional amended petition was filed by Attorney Clarkson on August 22, 2017. Upon consideration of such petitions, [the PCRA court] held three hearings on the matter [on] November 20, 2017, July 30, 2018, and most recently on January 10, 2019. The most recent hearing on January 10th was scheduled after Appellant filed an additional motion to amend his PCRA petition, which was granted. Specifically, Appellant asserted a newly-recognized constitutional right pursuant to **McCoy v. Louisiana**, 138 S.Ct. 1500 (2018) [(trial court's ruling allowing counsel to proceed with strategy conceding guilt in guilt phase of capital case, over defendant's objections, constituted a structural error entitling defendant to a new trial)].

At [Appellant's criminal trial of August, 2007,] the following evidence was established:

On July 20, 2005, Linda Vargus went to the Harrisburg bus station to pick up her sister-in-law. (NT. 61). Vargus phoned her husband on the way home because she needed him to park the minivan. (NT. 61-62). Kevin Coleman (Vargus's husband) came to the car (while Vargus went into the house), and parked the minivan less than a block away from their home at 1601 Green Street. (NT. 115). On his way back to the house, three men approached Coleman; the faces of two of them were covered with bandanas and all three men were holding guns. (N.T. 116). Coleman emptied his pockets and started to run; he heard five shots as he fled home. (N.T. 119-120). Coleman was shot twice in the right leg and once in the left leg. (N.T. 121). Vargus opened the door, saw Coleman lying in a pool of blood, and called 911. (N.T. 64-66). Coleman underwent extensive reconstructive surgery and has limited use of his leg. (N.T. 124-126).

Less than one month after the shooting, Detective Donald Heffner of the Harrisburg Police

- 2 -

spoke to Appellant about the incident; he denied involvement. (N.T. 144). Subsequently, in the summer of 2006, Detective Heffner received information that an Ayodi Harper was involved in Coleman's robbery and shooting. Harper implicated Appellant Brown and another person (known as "Boo-Boo") as the other perpetrators. (N.T. 140-143). When Detective Heffner re-interviewed Appellant, he claimed that Coleman approached him on the evening in question and asked to purchase drugs, and that Harper robbed and shot Coleman. (N.T. 146-147). Contrary to Appellant's version, Harper attested that the three men had been driving around that night looking for someone to rob. When they saw Coleman, they decided to surround him. Harper claimed that Coleman threw his wallet and started to run. While Harper went after the wallet, Appellant shot Coleman. (N.T. 87-91).

Jury Trial, August 9-10, [2007], Notes of Testimony, Vol. I and Vol. II].

In his first amended PCRA petition, Appellant concedes [his present] petition is untimely; however, he alleges a timeliness exception—the facts upon which this claim is predicated were unknown to Appellant and could not have been ascertained by the exercise of due diligence. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii). Specifically, in his petition Appellant averred that he was made aware of a letter written by Ayodi Harper stating that [Harper] lied during trial.

At the first PCRA hearing, Mr. Harper was called as a witness. He testified that he resides at Coal Township SCI, and acknowledged that he testified against Appellant at trial regarding the July 20, 2005 robbery. [PCRA Hearing, November 20, 2017, Notes of Testimony at 14-21]. Mr. Harper confirmed at the PCRA hearing that, at trial, he had initially testified that he did not remember what happened. Following a recess, however, Mr. Harper stated that the district attorney threatened to revoke his negotiated plea deal if he did not testify against Appellant. Mr. Harper went on to testify at trial that he, Appellant, and a third person by the name of "Boo" (Cordero Urrutia) participated in the robbery. [PCRA Hearing, N.T. at 22-29J.

Mr. Harper was then asked to identify a copy of a letter, which he claimed was written by him. He attested that he wrote it in 2014 to another inmate by the name of Richard Wimbush. [PCRA Hearing, N.T. at 31-34]. He was hoping that Mr. Wimbush could help to get his sentence reduced or vacated, and that it might help Appellant as well. [PCRA Hearing, N.T. at 37, 45-48]. In the letter, Mr. Harper claimed that he and Appellant were asleep in a car on 14th Street at the time of the robbery. [PCRA Hearing, N.T. at 48, 51, 54, 67]. Mr. Harper stated that he did not testify truthfully at trial, and that Appellant did not commit the July 20, 2005 robbery. [PCRA Hearing, N.T. at 69].

Mr. Wimbush also testified at the hearing and confirmed that he knew Mr. Harper from Coal Township SCI. Mr. Wimbush stated that Mr. Harper sought him out for help with filing a grievance, as he had the reputation as a jailhouse lawyer. He stated that he and Mr. Harper were in a restricted housing unit together and communicated much of the time by passing notes. [PCRA Hearing, N.T. at 75-84]. He identified the letter in question as the letter that was written to him by Mr. Harper and explained that it was to aid in a post-conviction petition for Mr. Harper to receive back-time, and to help Appellant. [PCRA Hearing, N .T. at 87-89]. Mr. Wimbush was transferred out of SCI Coal Township and was transferred to SCI Forest in November of 2014, where he met Appellant. Appellant expressed interest in pursuing a PCRA claim, and Mr. Wimbush provided Appellant [information] about the letter written by Mr. Harper. [PCRA Hearing, N.T. at 90-98]. Following Mr. Wimbush's testimony, Appellant's attorney requested a continuance to present testimony of Appellant.

On July 30, 2018, a second PCRA hearing was held. Appellant testified and confirmed that his co-defendant, Mr. Harper, originally took the stand at trial claiming not to recall anything about the crimes, and after the trial recess, he implicated Appellant in the burglary. [PCRA Hearing, July 30, 2018, N.T., pp. 16-19]. Appellant confirmed that he [and] Mr. Wimbush met in prison in November of 2015. He discovered that Mr. Wimbush knew about his case, and ultimately Mr. Wimbush gave Appellant the letter written by Mr. Harper. Appellant stated that everything in the letter was true. [PCRA Hearing, N. T. at 22-36, 56].

Mr. Harper was called back to testify at the second PCRA hearing, and stated the opposite of what he had testified to at the November 20, 2017 hearing. This time, Mr. Harper outright

- 4 -

denied having written the letter in question and testified that he had not ever seen it prior to the first PCRA hearing. He also denied that he ever met Mr. Wimbush or spoke with him about filing grievances. Finally, he stated that the testimony he gave at trial was accurate, and that the robbery was actually committed by Appellant in the presence of himself and Cordero Urrutia ("Boo"). [PCRA Hearing, N.T. at 62-81].

Appellant also offered testimony at the third and final PCRA hearing on January 10, 2019. Appellant was questioned about [] letters he wrote in 2007 to his trial attorney, Wendy Grella, Esq. In such letters he relayed to Attorney Grella that he was not present for the crimes in question. [PCRA Hearing, January 10, 2019, Notes of Testimony, pp. 11-13]. Appellant testified that he was only able to meet with Attorney Grella a couple of times, so he wrote her multiple letters and spoke with her on at least eight occasions. Appellant recalled telling Attorney Grella that he was not present at the scene of the crimes approximately six times during prison visits and four times in writing. [PCRA Hearing, N.T. at 13-15]. Appellant admitted that in his statement to Detective Heffner, he said he was at the scene of the crime, and that Detective Heffner informed him that Mr. Harper had put him at the scene of the crime. [PCRA Hearing, N.T. at 16-17]. When asked if Attorney Grella told the jury during trial that he was present for the crimes charged, Appellant answered yes. He went on to explain that he believed it occurred during closing arguments, and that the case of **McCoy** is what made Appellant question it. Appellant claims Attorney Grella lied to the jury in making them believe that the statement he gave to Detective Heffner was truthful. Appellant did not confront her with lying to the jury because it "happened real fast." [PCRA Hearing, N.T. at 20-22].

PCRA Court Opinion, 4/30/19, at 1-5.

The PCRA court rejected both of Appellant's stated exceptions to the PCRA time-bar. With respect to the newly-discovered facts claim, the court concluded Appellant failed to prove the facts in question were previously unknown to him, as Harper testified it was Appellant who had reminded him prior to trial that they had no involvement in this robbery because they had

been sleeping in a car at the time. Nor did the PCRA court accept Appellant's claim of a newly-recognized constitutional right exception founded on the United States Supreme Court case **McCoy** without a proper argument that the decision applied retroactively to PCRA matters. This timely appeal followed.

Appellant presents the following two questions for our consideration:

1. After-Discovered Evidence. Brown received a letter through another inmate from his co-defendant. This letter explained that "this case we really didn't have anytning to do with." Brown knew of his co-defendant's lie when he testified, but could not prove the lie until he received his co-defendant's recantation. Did the trial court err in finding this was not after-discovered evidence?

2. Structural Error. The Supreme Court decided McCoy v. Louisiana, holding that an attorney cannot override the client's choice regarding the objective of his defense. Did the trial court err in holding that McCoy only applies to death penalty cases?

Appellant's brief, at 4.[1]

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Mitchell**, 141 A.3d 1277, 1283–1284 (Pa. 2016) (internal punctuation and citation omitted). Here, the PCRA court concluded Appellant untimely filed his petition and failed to establish the applicability of one of the time-for-filing exceptions. **See** PCRA Court Opinion, 4/30/2019, at 5-7.

---

[1] In Appellant's first issue, he mistakenly identifies his jurisdictional challenge as an "After-Discovered Evidence" claim when it is apparent that he raises a "Newly-Discovered Facts" claim. **See** infra.

- 6 -

The PCRA timeliness requirement is mandatory and jurisdictional in nature. **Commonwealth v. Taylor**, 933 A.2d 1035, 1038 (Pa. Super. 2007). The court cannot ignore a petition's untimeliness and reach the merits of the petition. **Id**.

A PCRA petition must be filed within one year of the date the underlying judgment becomes final. **See** 42 Pa.C.S. § 9545(b)(1). Appellant's judgment of sentence became final on February 12, 2009, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal, and Appellant did not petition the United States Supreme Court for *certiorari.* Therefore, Appellant had until February 12, 2010, to file a timely petition, making the one before us, filed over five years after that date, patently untimely.

Nevertheless, an untimely PCRA petition may still be considered if one of the three time-for-filing exceptions applies. **See** 42 Pa.C.S. § 9545(b)(1)(i)–(iii). A PCRA petition alleging any of the exceptions under Section 9545(b)(1) must be filed within 60 days of when the PCRA claim could have first been brought. 42 Pa.C.S. § 9545(b)(2).

Here, Appellant asserts his petition meets the timeliness exceptions applicable for claims of newly discovered facts, found at Section 9545(b)(1)(ii), and after-recognized constitutional rights, found at Section 9545(b)(1)(iii). **See** Appellant's Brief, at 21–28. We address each claim in turn.

With respect to a claim of newly-discovered facts, this Court has previously explained:

The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. ***Commonwealth v. Bennett***, 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. ***Commonwealth v. Carr***, 768 A.2d 1164, 1168 (Pa. Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. ***Commonwealth v. Breakiron***, 566 Pa. 323, 330–31, 781 A.2d 94, 98 (2001); ***Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa. Super.2010), *appeal denied,* 610 Pa. 607, 20 A.3d 1210 (2011). This rule is strictly enforced. ***Id.*** Additionally, the focus of this exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Marshall***, 596 Pa. 587, 596, 947 A.2d 714, 720 (2008) (emphasis in original).

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. ***Bennett***, ***supra*** at 393, 930 A.2d at 1270. "This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'" ***Id.*** Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii); ***Bennett***, ***supra****.* Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia,* unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

[S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner

> must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence.** If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.
>
> **Bennett**, **supra** at 395, 930 A.2d at 1272 (internal citations omitted) (emphasis in original). Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim. **Id.** at 395, 930 A.2d at 1271.

**Commonwealth v. Brown**, 111 A.3d 171, 176–177 (Pa. Super. 2015) (emphasis in original), *appeal denied*, 125 A.3d 1197 (Pa. 2015). Accordingly, we must determine whether Appellant has established "there were facts unknown to him and that he exercised due diligence in discovering those facts." **Id.** at 176.

In the PCRA court's Pa.R.A.P. 1925(a) opinion, it reviews the pertinent record of Mr. Harper's trial testimony, his PCRA letter/affidavit, and his testimony at both PCRA hearings, and observes, "It is highly questionable that Mr. Harper's letter could constitute [newly]-discovered evidence where Appellant himself was the source of such evidence and therefore knew of such prior to trial. **See** [**Marshall**, *supra*]; **Commonwealth v. Medina**, 92 A.3d 1210, 1216 (Pa.Super. 2014)." PCRA Court Opinion, at 6. Even if Mr. Harper's letter did satisfy the timeliness exception, the court continues, Appellant would not be entitled to relief on substantive grounds under the after-discovered evidence doctrine because Mr. Harper disavowed his recantation at the second PCRA hearing, denying he authored the letter and reasserting

his trial testimony that Appellant shot Mr. Coleman during the robbery. Therefore, the court concluded, Appellant did not carry his burden of proving that such evidence would likely compel a different result. **See Commonwealth v. Cox**, 146 A.3d 221, 228 (Pa. 2016) (explaining after-discovered evidence claim requires petitioner to prove that the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence, the evidence is not cumulative, it is not being used solely to impeach credibility, and it would likely compel a different result).

After careful review of the record, we agree with the PCRA court that the present matter is distinguishable from **Medina**.  In **Medina**, the defendant was convicted of murder based in part on the testimony of Hector Toro. **Medina**, 92 A.3d at 1213 (citation omitted).  Fourteen years after Medina was convicted, and five years after his judgment of sentence became final, Hector Toro recanted his trial testimony. **Id.** at 1213–1214.  Within 60 days of the recantations, Medina filed a PCRA petition and alleged that the recantation satisfied the newly-discovered facts exception to the PCRA's timeliness requirement. **Id.** at 1217 (citation omitted).

This Court held that that the PCRA court's conclusion that Medina had satisfied the newly-discovered facts exception was supported by the record, as Hector Toro had unequivocally implicated Medina throughout all proceedings leading up to and including the criminal trial, and there was no indication that his identification was in any way subject to coercion.  We

- 10 -

concluded, therefore, "that [Medina] could not have discovered the source of Hector Toro's recantation, or the recantation itself, through the exercise of due diligence, and his second petition was filed timely under the [newly]-discovered evidence exception." *Id.* at 1217–18.

Here, in contrast, Appellant does not dispute that he was the source of the facts asserted in Harper's recantation. Indeed, he admits that he told Harper on the day of trial that they were not involved in this particular robbery, and that Harper thereafter equivocated at trial by first claiming not to remember his involvement in Mr. Coleman's robbery. Only after the court granted the Commonwealth's request for an immediate recess did Harper return and testify against Appellant.

Defense counsel thereafter provided vigorous cross-examination to the extent it prompted Harper to confirm that the plea deal he struck with the District Attorney's office depended upon his testifying consistently with his earlier statement identifying Appellant as the sole gunman in this robbery. The defense, however, despite Appellant's conversation with Harper that morning, never extended that line of questioning by asking Harper whether he initially balked at recollecting the robbery because, in fact, Appellant and he had been elsewhere sleeping at the time.

For these reasons, we discern no error with the PCRA court's rejection of Appellant's newly discovered facts claim, as he had failed to make the requisite demonstration that the facts upon which the claim was predicated were unknown to him at the time of trial. The above record shows that

- 11 -

Appellant knew at trial both the underlying facts of the alleged alibi that Harper shared in his PCRA letter/affidavit of recantation and that Harper's favorable guilty plea deal depended on his following through with incriminating testimony at Appellant's trial. *See Commonwealth v. Padillas*, 997 A.2d 356, 363–64 (Pa. Super. 2010) (holding a petitioner who fails to question an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence).

Finally, and also unlike in *Medina*, the recantation at issue here was withdrawn by the witness. In this respect, we find it significant that Harper expressly disavowed his recantation during the course of the PCRA proceedings, and the PCRA court, which had the benefit of observing Harper on the witness stand for two hearings, did not conclude that Harper's initial recantation was, nonetheless, credible. Accordingly, Appellant's newly discovered facts claim affords him no relief.

In Appellant's remaining claim, he attempts to invoke the newly-created-constitutional-right exception to the PCRA's timeliness requirements, Section 9545(b)(1)(iii), by citing *McCoy*. In *McCoy*, the High Court held that a defendant has the Sixth Amendment right to require that his counsel refrain from conceding guilt during the guilt phase of a capital trial, even when counsel reasonably believes the concession is crucial to the defense strategy of avoiding the death penalty. *See McCoy*, 138 S.Ct. at 1509. *McCoy* further observed that the trial court's ruling allowing counsel to proceed with that strategy over defendant's objections constituted a structural error

entitling defendant to a new trial without first establishing prejudice. *Id.* at 1511.

Here, the PCRA court determined that Section 9545(b)(1)(iii) does not apply to Appellant's petition because the *McCoy* decision has not been held by the United States Supreme Court to apply retroactively. We agree.

Assuming *arguendo* that the "structural error" holding in *McCoy*, a capital case, is applicable to the case at hand, the newly-recognized constitutional right exception in Section 9545(b)(1)(iii) would still be inapplicable. Our Supreme Court has held that:

> Subsection (iii) of Section 9545 has two requirements. First, it provides that the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or this court after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, *i.e.*, "that court" has already held the new constitutional right to be retroactive to cases on collateral review.

*Commonwealth v. Abdul-Salaam*, 812 A.2d 497, 501 (Pa. 2002).

Here, Appellant fails to establish that *McCoy* "has been held" by the United States Supreme Court to apply retroactively on collateral review. The *McCoy* decision itself neither expresses nor implies the Court's intent to have the decision apply retroactively on collateral review, and Appellant cites no decision applying it retroactively or otherwise recognizing in it a retroactive

effect. Therefore, Appellant cannot successfully claim the timeliness exception set forth in Section 9545(b)(1)(iii).[2]

For the preceding reasons, Appellant's untimely petition did not satisfy either timeliness exception raised. Accordingly, we conclude the PCRA court did not err in dismissing it.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2020

---

[2] We also find persuasive this Court's recent memoranda decisions in **Commonwealth v. Parker**, 2020 WL 755044, at *3 (Pa.Super. February 14, 2020) and **Commonwealth v. Hoffman**, 2020 WL 200838, at *2 (Pa.Super. January 13, 2020), in which this Court determined that **McCoy** does not create or otherwise recognize a new constitutional right for purposes of Section 9545(b)(1)(iii).