812 A.2d 497

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Seifullah ABDUL–SALAAM, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided Dec. 13, 2002.

Robert Brett Dunham, Michael Wiseman, Martha Josephine Swan, Philadelphia, for appellant Seifullah Abdul–Salaam.

Jamie Keating, for appellee, Com. of PA.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Justice CAPPY.

Appellant, Seifullah Abdul–Salaam, filed an Emergency Motion for a Stay of Execution or Establishment of Expedited Briefing Schedule. Thereafter, this court scheduled oral argument for December 3, 2002, related to the jurisdiction of this court to entertain one of Appellant's claims. Following oral argument on December 3, 2002, by order dated December 4, 2002, we denied the Stay of Execution noting that an opinion would follow. This opinion is filed in support of that order.

The procedure underlying the instant matter is relatively straightforward. On March 16, 1995, Appellant was convicted of first-degree murder and sentenced to death. This court affirmed the judgment of sentence on June 18, 1996. *Commonwealth v. Abdul–Salaam*, 544 Pa. 514, 678 A.2d 342 (1996). On May 13, 1997, Appellant filed a first petition for post-conviction relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* The PCRA court denied that petition on November 12, 1998. On December 31, 2001, this court affirmed the PCRA court's order denying Appel-

lant's petition for post-conviction relief. *Commonwealth v. Abdul–Salaam*, 570 Pa. 79, 808 A.2d 558 (2001). Appellant then filed a timely Application for Reconsideration, which was denied on September 20, 2002. Prior to this court's ruling on the Application for Reconsideration, Appellant filed a second petition for Habeas Corpus Relief and Statutory Post–Conviction Relief on February 28, 2002.

On October 22, 2002, the Governor signed a warrant of execution. Appellant's execution was scheduled for December 12, 2002. Having had no disposition of his second petition, on November 6, 2002, Appellant filed with the PCRA court a Praecipe for Entry of Adverse Order Pursuant to Pennsylvania Rule of Appellate Procedure 301(e)(allowing party to file a praecipe "[w]here the exigency of the case is such as to impel an immediate appeal and the party intending to appeal an adverse action is unable to secure the formal entry of an appealable order pursuant to the usual procedures. . . ."). On that same date, Appellant also filed a Notice of Appeal and accompanying documents in the lower court. On November 8, 2002, the PCRA court issued an opinion "Pursuant to Rule 1925." The PCRA court held that the Praecipe for Entry of Adverse Order had the effect of removing jurisdiction from the court.[1]

Appellant filed the instant Emergency Motion for a Stay of Execution or Establishment of Expedited Briefing Schedule before this court on November 8, 2002. In his Motion, Appellant argued that this court has jurisdiction over one of his claims, which raised a constitutional question, pursuant to 42 Pa.C.S. § 9545(b)(1)(iii). Specifically, Appellant argued that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), created a new rule of constitutional law, which should be applied retroactively to his

1. The PCRA court also indicated that in order for a court to review claims contained in a second PCRA petition, a defendant must make a strong prima facie showing that a miscarriage of justice took place or that he was innocent of the crimes for which he was charged. Ultimately, the court determined that Appellant was unable to make this showing.

case. Appellant also argued that the remaining claims raised in his second petition entitled him to a stay and full appellate review.

On November 20, 2002, we issued an Order holding the Motion for Stay of Execution in abeyance. In order to determine whether Appellant was entitled to relief on this Motion, this court granted limited oral argument to explore the following two questions:

> 1) Whether the language "has been held" in 42 Pa.C.S. § 9545(b)(1)(iii) requires that a determination of retroactivity be made prior to the petitioner filing his PCRA petition. *See, e.g., Tyler v. Cain,* 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001).

> 2) Whether *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) apply retroactively to collateral matters presented pursuant to 42 Pa.C.S. § 9545(b)(1). *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

For the reasons discussed below, we deny the stay of execution.

The PCRA requires that in order for a court to issue a stay of execution in a collateral matter, "a petition for postconviction relief which meets all the requirements of this subchapter has been filed and is pending and the petitioner makes a strong showing of likelihood of success on the merits." 42 Pa.C.S. § 9545(c). In order for a petitioner to show that he meets the requirements of this subchapter, the petition must be timely filed. *Commonwealth v. Pursell,* 561 Pa. 214, 749 A.2d 911, 915 (2000). This time requirement is jurisdictional. *See Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638 (1998); *see also Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 222 (1999). Pursuant to the PCRA, a petitioner must prove that

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the

date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Thus, pursuant to § 9545(b), the petition must be filed within one year of the date that the judgment became final, or a petitioner must prove one of the exceptions to the time requirement pursuant to subsections (i)–(iii).

In this case, Appellant argues that the constitutional claim raised in his petition meets the exception in subsection (iii). According to Appellant, the language "has been held" in subsection (iii) does not require that the same court that recognized the new constitutional right also determine that the right is retroactive; rather, he claims that this section is satisfied even when the right at issue is held to be retroactive in the case before the court. In other words, accepting Appellant's interpretation, any Pennsylvania court could rule on the retroactivity question first and then, in the same case, decide the merits of the claim.

The Commonwealth responds that the language "has been held" for purposes of subsection (iii) requires that the determination of retroactivity be made prior to a petitioner filing the PCRA petition based upon the exception contained in subsection (iii).

■ In construing subsection (iii), as with any question of statutory construction, we must begin with the Rules of Statutory Construction. A statute's words and phrases are to be construed according to their common and approved usage, and where the words of a statute are clear and free from ambiguity, the letter of the statute may not be disregarded. *See* 1 Pa.C.S. §§ 1903(a), 1921(b); *Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384, 391 (2000).

Subsection (iii) of Section 9545 has two requirements. First, it provides that the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or this court after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, i.e., "that court" has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.

The inquiry does not necessarily end with the plain language of a single section of the PCRA statute, since certain post-conviction claims are to be channeled through the statutory post-conviction procedure although they might not otherwise plainly fall within the parameters of the PCRA. *See, e.g., Commonwealth v. Lantzy,* 558 Pa. 214, 223, 736 A.2d 564, 570 (1999) (stating that "the PCRA provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal, since such claims also were cognizable on traditional *habeas corpus* review"). Rather, the question arises whether the salient restriction on serial, state post-conviction review is a reasonable one, since this Court has acknowledged that the General Assembly is authorized, consistent with the Pennsylvania Constitution, to impose reasonable restrictions on the various

forms of post-conviction review. *See Commonwealth v. Peterkin,* 554 Pa. 547, 556–57, 722 A.2d 638, 642 (1998).

Here, we view the relevant limitation on serial state collateral review as a reasonable one, particularly as applied to the circumstances of the present case, in which the claims asserted depend upon an evolving line of United States Supreme Court precedent involving an interpretation of the United States Constitution, and review within the federal judicial system over which that Court presides has not been shown to be foreclosed. Therefore, accepting the plain language of the statute, as exemplifying a reasonable restriction on serial state collateral review, we hold that the language "has been held" means that the ruling on retroactivity of the new constitutional law must have been made prior to the filing of the petition for collateral review.

We find further support for our conclusion today in a recent United States Supreme Court case. *Tyler v. Cain,* 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). In *Tyler,* the Court looked at a similar provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provided that the petitioner must make "a prima facie showing" that his "claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Tyler,* 533 U.S. at 660, 121 S.Ct. 2478 (quoting 28 U.S.C. § 2244(b)). Specifically, the Court was called upon to interpret the phrase "made retroactive to cases on collateral review by the Supreme Court."

When reviewing the new constitutional rule in context, the Court explained that the only way a new rule becomes retroactive was simply by the action of the Supreme Court itself. Further, "the only way the Supreme Court can, by itself 'lay out and construct' a rule's retroactive effect . . . is through a holding." *Id.* at 663, 121 S.Ct. 2478. Thus, the Court determined that a new rule of constitutional law is not "made retroactive to cases on collateral review" unless the Supreme Court has held it to be retroactive. *Id.*

Appellant argues that *Tyler* should not be followed in this case, since it involved federal habeas corpus review, rather than state collateral review. Further, he asserts that *Tyler* is distinct from this case, because the instant case involves the sentence of death rather than a sentence of life in prison. However, Appellant overlooks that in *Tyler* the Court was merely construing the language of the statute and did not rely on any rationale that was unique to the AEDPA. Indeed, in *Tyler*, the Court implied that had Congress used the word "held" instead of "made," the intent of the statute would be clear. Thus, the analysis employed by the Court in *Tyler* supports our use of a similar analysis in this case. Additionally, we are mindful that the instant case involves a capital petitioner; however, in interpreting the exception in subsection (iii) to the jurisdictional time requirement, we are not at liberty to disregard the plain language of the statute.

After reviewing the plain language of the subsection and United States Supreme Court case law, we are persuaded that the language "has been held" in 42 Pa.C.S. § 9545(b)(1)(iii) means that a retroactivity determination must exist at the time that the petition is filed. In this case, as Appellant acknowledges, the United States Supreme Court has not made a determination regarding the availability of *Apprendi* or *Ring* to cases pending on collateral review. Thus, Appellant has not met the PCRA's jurisdictional time requirement for review of his constitutional claim. This claim therefore does not entitle Appellant to a stay of execution.[2] *See* 42 Pa.C.S. § 9545(c).

In addition to the constitutional challenge raised and discussed above, Appellant also raises three additional bases for entering a stay of execution. First, Appellant argues that the prosecutor at his trial, now Pennsylvania Supreme Court Justice Eakin, suppressed material in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). According to Appellant, this court did not adequately dispose

---

2. There is no reason to reach the second issue that was raised and briefed by the parties regarding the retroactive application of *Apprendi* and *Ring,* since we do not have jurisdiction to entertain this claim.

of this issue in his first PCRA petition. Specifically, Appellant questions the integrity of this court by insinuating that we intentionally sidestepped reviewing this issue in order to avoid ruling on the propriety of one of our own colleague's behavior. Appellant also argues that he is entitled to relief because according to Appellant, we retroactively applied a new set of rules in reviewing his case, i.e., the abolition of relaxed waiver in collateral matters and strict adherence to the pleading and proof requirements of the PCRA, in violation of his due process rights.

As to Appellant's first argument, which essentially questions the integrity of our court, we only note that this court reviews every matter with fairness and thoroughness. This issue merits no further comment. As to his second argument, Appellant raised substantially the same argument in his Application for Reconsideration filed on January 11, 2002. We denied his Application for Reconsideration on September 20, 2002 and thus, the issue has been previously reviewed. Additionally, we have held that following *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), we require strict adherence to the statutory language of the PCRA and a petitioner will only be entitled to relief "where a petitioner shows that the statutory exceptions to waiver in the PCRA apply [found in the pre–1995 version of the PCRA], or where a petitioner properly raises claims of counsel's ineffectiveness." *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 941 (2001). We explained that this court did not announce a new rule of law in *Albrecht;* rather, *Albrecht* was a mere clarification of existing law. *Id.; Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293 (1999). Thus, contrary to Appellant's assertions, we did not retroactively apply a new set of rules to review of his case, but merely applied the law that we set forth in *Albrecht. See, e.g., Bracey.*

Second, Appellant raises a claim challenging the adequacy of the fingerprint evidence. According to Appellant, recent scientific disclosures undermine the reliability and admissibility of fingerprint evidence. Thus, Appellant is attempting to craft an after-discovered evidence claim that fits within an

exception to the jurisdictional time bar. *See* 42 Pa.C.S. § 9545(b)(1)(ii).

Appellant's argument conveniently overlooks that even in the absence of such fingerprint evidence, there was overwhelming eyewitness testimony placing Appellant at the scene of the crime. At least four persons who were at the scene of the crime testified that Appellant shot the police officer. *See Commonwealth v. Abdul–Salaam,* 544 Pa. 514, 678 A.2d 342, 346 (1996). Thus, even if we were to accept Appellant's argument regarding the fingerprint evidence, Appellant is simply unable to show that the evidence would have altered the outcome of the trial. 42 Pa.C.S. § 9543(a)(2)(vi).

Lastly, Appellant asserts another after-discovered evidence claim related to a possible mitigating circumstance. Appellant argues that a recent article in *Scientific American* reveals that there are abnormalities in certain brain structures of child abuse victims, which affect the neural development in such children. Appellant acknowledges that he already pursued and was denied relief on a claim related to organic brain damage, but argues that in light of this latest scientific evidence, he should be allowed to have brain imaging done to present this court with an actual picture of his brain.

Strikingly absent from Appellant's argument is any evidence that Appellant suffers from any brain abnormality. Appellant's claim is merely hypothetical—i.e., because he was abused as a child he may have some brain abnormality and thus, he should be given the opportunity to look into this possibility. This court is generally reluctant to grant an evidentiary hearing to merely act as a fishing expedition for any possible evidence that may support some speculative claim. *Commonwealth v. Scott,* 561 Pa. 617, 752 A.2d 871, 877 n. 8 (2000). Similarly, we would be reluctant to grant Appellant's request for brain imaging, since at this juncture, Appellant has not presented any meaningful support for his argument and thus, granting his request would essentially grant him a fishing expedition in the hopes of uncovering additional mitigating evidence.

Additionally, during the litigation of his first PCRA petition, the PCRA court held extensive hearings as to whether Appellant was organically brain damaged. In reviewing this claim on appeal, we concluded that even assuming the claim had arguable merit, trial counsel had a reasonable basis for not presenting such evidence to the jury. *Commonwealth v. Abdul–Salaam*, 570 Pa. 79, 808 A.2d 558, 561–62 (2001). Appellant fails to explain how this "new" evidence would alter our earlier conclusion that trial counsel had a reasonable basis for not presenting such evidence to the jury.

For the reasons stated herein, we find that Appellant has failed to establish that he is entitled to a Stay of Execution pending further review of his claims. Further, we do not find, based upon the claims Appellant has raised before this court, that it is necessary to establish an expedited briefing schedule. Accordingly, the petition for the Emergency Motion for Stay of Execution or Establishment of Expedited Briefing Schedule is denied.[3]

Justice EAKIN did not participate in the consideration or decision of this matter.

---

3. Appellant has also filed an Application to File a Post–Submission Communication pursuant to Pa.R.A.P. 2501 regarding questions that arose during oral argument. This court did not request that Appellant submit such a communication and Appellant does not allege any modification or reversal of authority relied on by either party that would necessitate the filing of such a communication. *See* Pa.R.A.P. 2501(a) and (b). Accordingly, we will enter an order denying Appellant's request to file a post-submission communication.