**[J-16-2021] [MO: Baer, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 56 MAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court dated February 24, |
| | : | 2020 at No. 3339 EDA 2018 |
| v. | : | Affirming the PCRA Order of the |
| | : | Montgomery County Court of |
| | : | Common Pleas, Criminal Division, |
| JAMES HENRY COBBS, | : | dated October 23, 2018 at No. CP- |
| | : | 46-CR-287-1979. |
| Appellant | : | |
| | : | SUBMITTED:  January 22, 2021 |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                          **DECIDED:  August 17, 2021**

The majority concludes appellant's petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-46, properly invoked the newly-recognized constitutional right exception to the PCRA's time-bar.  *See* Majority Opinion at 24-26 & n.17.  That exception applies in the incredibly limited circumstance where "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively."  42 Pa.C.S. §9545(b)(1)(iii).  But I am aware of no right — and appellant did not purport to forward one in any event — recognized by the United States Supreme Court or this Court which pertains to adult state inmates convicted under Pennsylvania's assault by a life prisoner statue, 18 Pa.C.S. §2704. Accordingly, because I believe the majority's jurisdictional analysis is unsupportable, I respectfully dissent.

In holding appellant satisfied the newly-recognized constitutional right exception, the majority explains appellant filed his petition within 60 days of the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S 460 (2012), and amended his petition within 60 days of the Supreme Court's decision in *Montgomery v. Louisiana*, 577 U.S. 190 (2016), as was then required by former 42 Pa.C.S. §9545(b)(2) (petitions invoking timeliness exceptions must be filed within 60 days of date claim could have been presented) (subsequently amended).[1] In *Miller*, the court recognized an important but narrow new rule: "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. And in *Montgomery*, the Court held the new rule announced in *Miller* applies retroactively. *See Montgomery*, 577 U.S. at 212.[2] It is the combination of these rulings — *Miller*'s limited ruling applicable to juveniles sentenced under a mandatory sentencing scheme, and *Montgomery*'s effect in rendering that narrow

---

[1] The majority correctly observes the 2018 amendment to Section 9545(b) is inapplicable here because appellant filed his petition prior to December 24, 2018. *See* Majority Opinion at 5 n.6.

[2] Until recently, it was settled "that *Miller* announced a substantive rule of constitutional law" that applies retroactively. *Montgomery*, 577 U.S. at 212. However, this is no longer clear. In its recent decision in *Jones v. Mississippi*, ___ U.S. ___, 141 S.Ct. 1307 (2021), the Supreme Court appears to have "[o]verrule[d] *Montgomery* in substance but not in name." *Id.* at 1327 (Thomas, J., concurring in judgment). The *Jones* Court expressly declined to overrule "*Montgomery*'s holding that *Miller* applies retroactively on collateral review [because b]y now, most offenders who could seek collateral review as a result of *Montgomery* have done so and, if eligible, have received new discretionary sentences under *Miller*." *Id.* at 1317 n.4. However, the Court effectively rejected *Montgomery*'s finding that *Miller* announced a new substantive rule of constitutional law. The Court recognized it had employed a unique approach in deciding *Montgomery*, one that was "in tension with the Court's retroactivity precedents that both pre-date and post-date *Montgomery*[.]" *Id.* Significantly, the Court cautioned that "those retroactivity precedents — **and not *Montgomery*** — must guide the determination of whether rules other than *Miller* are substantive." *Id.* (emphasis added). The decision in *Jones* leads to one inescapable conclusion: *Montgomery*'s key holding (declaring *Miller* retroactive) has been preserved, but the Court's reasoning behind that conclusion has not.

holding retroactive — that the majority believes vests us with the jurisdiction necessary to consider the validity of appellant's assault by a life prisoner conviction.

The problem with this theory is that it glosses over the pertinent statutory language. To reiterate, the newly-recognized constitutional right exception applies where "**the right asserted** is a constitutional right **that was recognized** by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively." 42 Pa.C.S. §9545(b)(1)(iii) (emphasis added). So the dispositive question here is what was "the right asserted" "that was recognized" by the United States Supreme Court? The majority appears to believe it was that appellant's "conviction and sentence for assault by a life prisoner had retroactively been **deemed invalid as a matter of law** by the High Court's decisions in *Miller* and *Montgomery*." Majority Opinion at 26 (emphasis added); *see also id.* at 34-35 (concluding "[d]ue to the retroactive application of *Miller*'s substantive holding as required by *Montgomery*, [a]ppellant was never a life prisoner and, thus, could not, consistent with due process, be convicted or punished as one pursuant to Section 2704"). This is incorrect.

Taking the law first, it is plain that neither *Miller* nor *Montgomery* said anything at all about due process, Pennsylvania's assault by a life prisoner statute, adult offenders, or appellant specifically. Indeed, the Superior Court has on multiple occasions recognized the limited applicability of those decisions, and has correctly rejected attempts by prisoners to extend their holdings — under the guise of the newly-recognized constitutional right exception — to challenge their **adult** murder convictions. *See, e.g., Commonwealth v. Lee*, 206 A.3d 1 (Pa. Super. 2019) (*en banc*); *Commonwealth v. Furgess*, 149 A.3d 90 (Pa. Super. 2016); *Commonwealth v. Cintora*, 69 A.3d 759 (Pa. Super. 2013), *abrogated on other grounds by Montgomery, supra*. The reason these

holdings are correct is simple: "the right[s] asserted" in those cases were **new rights** sought to be created, not old rights already "recognized by the Supreme Court of the United States . . . [that have] been held by that court to apply retroactively." 42 Pa.C.S. §9545(b)(1)(iii).

The same is true here. In his amended PCRA petition, appellant candidly admitted that **"[w]hile *Miller* and *Montgomery* do not apply to assaults by adult inmates**, it must be recognized that the sentence [he] received for the assault was the direct result of him serving a sentence that was deemed unconstitutional." Amended PCRA Petition, 11/17/2017 at 8 (emphasis added); *see id.* at 12 (conceding "in 1978 when [he] was convicted of assault by a life prisoner, it was based on the fact that he was serving a sentence of life without parole"). By his own words, then, appellant acknowledged *Miller* and *Montgomery* do not apply to his assault by a life prisoner conviction; rather, those decisions merely "create[d] a changed circumstance" from which he now seeks to have this Court recognize a brand new rule governing his assault by a life prisoner conviction. *Id.* at 5.[3] Yet the majority uncritically seizes this invitation, declaring that individuals like

---

[3] Further proof that appellant sought an extension of the law rather than an application of existing law is evident from the language used elsewhere in his petition. *See, e.g.*, Amended PCRA Petition, 11/17/2017 at 5 (contending his petition "is timely filed as the relief sought in this case **is directly connected to** the relief afforded from *Miller*, and *Montgomery*") (quoting heading with some capitalization omitted and emphasis added); *id.* at 6 (asserting his "ability to receive relief in this case was **entirely dependent on**" what happened with his homicide sentence) (emphasis added); *id* (arguing it "is **because of** the rights recognized in *Miller*, and *Montgomery* that [he] is entitled to relief") (emphasis added); *id.* at 8 (remarking his "entitlement to relief **springs from** the rights afforded in *Miller* and *Montgomery*") (emphasis added). It would be odd for appellant to use phrases such as "connected to[,]" "dependent on[,]" "because of[,]" and "springs from" — all of which are conventional ways of suggesting an extension of something — if he really meant the right being asserted already has been recognized by the High Court and held to apply retroactively.

appellant are serving a sentence that violates due process. Majority Opinion at 34-35.[4] But because neither *Miller* nor *Montgomery* said anything of the sort, a fact which appellant concedes, the majority's extension of the law in this manner is inappropriate at this pre-jurisdictional stage.

I reiterate our holding that under the plain terms of Section 9545(b)(1)(iii), in order to satisfy the exception, a petitioner must plead and prove the new constitutional right asserted has already been held to apply retroactively by the court that issued it. S*ee Commonwealth v. Reid*, 235 A.3d 1124, 1161 (Pa. 2020) ("[B]ecause the 'has been held' language [in Section 9545(b)(1)(iii)] 'means that the ruling on retroactivity of the new constitutional law must have been made prior to the filing of the petition for collateral review,' our state collateral courts are, in fact, not 'open' to a claim that a new constitutional right applies, unless the right has already been held to apply retroactively.") (internal citation, brackets, and emphasis omitted), *quoting Commonwealth v. Abdul-Salaam*, 812 A.2d 497, 501 (Pa. 2002). What the majority does here is directly contrary to the requirements of the statute: It extends the ruling in *Miller* and *Montgomery* (by holding appellant's sentence for assault by a life prisoner violates due process) and then repackages that conclusion as emanating from the *Miller* and *Montgomery* decisions in an attempt to establish our jurisdiction (even though *Miller* and *Montgomery* were decided under the Eighth Amendment, not due process). Put differently, the majority first answers

---

[4] Although there are likely few others in appellant's precise predicament, I see no logical reason why the majority's new rule wouldn't similarly apply to other crimes that require as a condition precedent that the perpetrator is an inmate serving a sentence. For example, imagine if instead of assaulting another inmate, a defendant escaped prison at a time when he was serving an unconstitutional life sentence for murder. Like a conviction for assault by a life prisoner, a valid escape conviction is predicated on the individual being incarcerated. *See* 18 Pa.C.S. §5121. Under the majority's reasoning, because the inmate who escaped was serving an illegal sentence at the time he broke free, his sentence imposed for the escape conviction likewise would violate due process.

the substantive question presented on the merits and then says that answer resolves the preliminary question of jurisdiction. This we cannot do.

The error of the majority's unorthodox jurisdictional analysis is clear considering our recent and unanimous rejection of a similar attempt by a PCRA petitioner to impermissibly broaden a narrow rule announced by the United States Supreme Court in an effort to bypass the PCRA's strict jurisdictional constraints. We found jurisdiction lacking in *Commonwealth v. Spotz*, 171 A.3d 675 (Pa. 2017), where Spotz had maintained the 42 Pa.C.S. §9711(d)(9) aggravating factor of a significant history of felony convictions involving the use of threat or violence — a basis for his sentence of death — was newly held to be unconstitutionally vague because its language was identical to the residual clause of The Armed Career Criminal Act of 1984, 18 U.S.C. §924(e)(2)(B)(ii), which had been ruled unconstitutionally vague in *Johnson v. United States*, 576 U.S. 591 (2015); *Welch v. United States*, ___ U.S. ___, 136 S.Ct. 1257 (2016) held *Johnson* applies retroactively. In doing so, we stated:

> Spotz maintains that this combination of rulings satisfies the elements of the newly-recognized constitutional right exception. However, Spotz was not sentenced under the Act. He was sentenced under Pennsylvania's death penalty statute after the jury found the existence of the (d)(9) aggravator. It is true that *Johnson* created a substantive, constitutional rule. It also is true that *Welch* requires retroactive application of that rule. Nonetheless, Spotz still must demonstrate that those cases created a right that applies to him. It is axiomatic, and self-evident, that the asserted newly-created right actually must enure to the benefit of the petitioner. The right or rule established by the Supreme Court actually must touch upon the facts or procedure that resulted either in the petitioner's conviction or sentence. For example, for purposes of the newly-recognized constitutional right exception, a person serving a sentence of life imprisonment cannot invoke new constitutional rights that govern only death penalty cases, **an adult cannot rely upon constitutional decisions that affect only processes pertaining to juveniles**, and a state prisoner cannot seek redress based upon constitutional rulings that extend only to federal statutes, as is the case here.

Spotz argues that the PCRA courts in this matter, by rejecting his attempts to invoke the newly-recognized constitutional right exception, erroneously considered the underlying merits of his claim, *i.e.* whether the language of the two provisions are so similar as to require a new sentencing hearing, and failed to strictly apply the statutory requirements. In his view, because the "residual clause" and the (d)(9) aggravator are substantially similar, the combination of *Johnson* and *Welch ipso facto* render his petitions timely. However, such an automatic conclusion would require that we ignore the basic, threshold necessity of showing that the right at issue is one that applies to the petitioner's case. For purposes of the exception, we consider only whether, at this point in time, either the United States Supreme Court or this Court has recognized a new constitutional right that is applicable to the petitioner. The only established right at this juncture applies to federal prisoners who have been sentenced under the federal statute. Nothing in *Johnson* suggests that the rule extends to state prisoners. In order for Spotz' petitions to be timely, the (d)(9) aggravator must have been held unconstitutional at the time that he filed his petitions. It has not been so held. Only the federal provision has been stricken.

Subsection 9545(b)(1)(iii) requires the assertion of a "right." As Spotz was sentenced under a state death penalty statutory scheme, and not under the unconstitutional federal statute at issue in *Johnson*, there simply is no "right" that Spotz can assert at this time. Thus, his invocation of the newly-recognized constitutional right exception necessarily fails.

Whether the "residual clause" and the (d)(9) aggravator are so similar that *Johnson* compels a similar void-for-vagueness invalidation — which would necessitate a significant deviation from our prior rulings — is a substantive question requiring consideration of whether a new, but inapplicable, right should be extended to a matter of state law or to a different area of substantive law. Only a court with jurisdiction can answer that question. Because Spotz has not satisfied the newly-recognized constitutional right exception, like the PCRA court, we lack that jurisdiction.

*Spotz*, 171 A.3d at 681-82 (emphasis added; internal citations and footnote omitted).

*Spotz* thus confirms the straightforward command of Section 9545(b)(1)(iii)'s text:

If there's even a slight mismatch between "the right asserted" and the "right that was

recognized by the Supreme Court of the United States or the Supreme Court of

Pennsylvania[,]" then the exception is not satisfied.[5]  Or, to put it in the terms of this case: Because the right asserted — that appellant's conviction or sentence resulting from the assault he committed as a life prisoner violates due process — is not the right that was recognized in *Miller* and made retroactive by *Montgomery*, appellant cannot meet the exception.  The majority's contrary conclusion is inconsistent with our precedent, the plain language of the statute, and common sense.

As stated succinctly by the Commonwealth in its brief, "in order to apply the *Miller* and *Montgomery* rule to [appellant], this Court would have to extend the ruling to other

---

[5] The majority asserts that *Spotz* is "completely distinguishable" because in that case the right that was recognized by the Supreme Court pertained to a federal statute, but the defendant's claim related to a state statute.  Majority Opinion at 26 n.17.  Respectfully, this argument, true as it is, misses the mark entirely.  The relevant similarity is that "the right asserted" here, like "the right asserted" in *Spotz*, is not the same "right that was recognized by the Supreme Court of the United States" such that it would satisfy the newly-recognized constitutional right exception.  42 Pa.C.S. §9545(b)(1)(iii).  In *Spotz*, the exception was not met because "the right asserted" related to a state statute, whereas the "right that was recognized by the Supreme Court of the United States" concerned a federal statute.  Here, the exception is not met because "the right asserted" sounds in due process and relates to one state statute (assault by a life prisoner under 18 Pa.C.S. §2704), whereas the "right that was recognized by the Supreme Court of the United States" concerned the Eighth Amendment's cruel and unusual punishments clause and called into question an entirely different state statute (mandatory life imprisonment for first-degree murder under former 18 Pa.C.S. §1102(a)).  In both *Spotz* and here, the mismatch between "the right asserted" and the "right that was recognized by the Supreme Court of the United States" is plain as day, albeit slightly different.

Still, the majority seizes on this legally insignificant difference while also clinging to *dicta* in *Spotz* indicating that "[t]he right or rule established by the Supreme Court actually must touch upon the facts or procedure that resulted either in the petitioner's conviction or sentence."  *Spotz*, 171 A.3d at 727-28; *see* Majority Opinion at 26 n.17.  To state what should be obvious, in *Spotz* we employed this "actually must touch upon" language as a simple means of expressing why the defendant's claim in that case failed; it was not remotely meant to broaden the plain language of the statute, which would of course be beyond this Court's power.  *See, e.g.*, 1 Pa.C.S. 1921(b).  Instead, our statement in *Spotz* merely reinforced the clear and unambiguous terms of the statute:  to meet the newly-recognized constitutional right exception, "the right asserted" must be identical to the "right that was recognized by the Supreme Court of the United States[.]"  42 Pa.C.S. §9545(b)(1)(iii).  In this sense, *Spotz* and the present case are indistinguishable.

types of cases that do not satisfy the requirements of Section 9545(b)(1)(iii) — such as, in this case, a situation where [appellant] was not a juvenile at the time of his crime, but he is, nonetheless, relying on an underlying juvenile life without parole sentence in an attempt to bring his claim within the confines of Section 9545(b)(1)(iii)." Commonwealth's Brief at 17-18. Not only does the majority ignore the Commonwealth's argument to improperly extend the law to cover appellant's case, it does so without first confirming we even have jurisdiction to hear the claim. This is not how the limited exception for newly-recognized constitutional rights was intended to operate. For my part, I would conclude, as we did unanimously just four years ago, that "[o]nly a court with jurisdiction can answer that question." *Spotz*, 171 A.3d at 682. And since appellant did not plead and prove an exception to the PCRA's time-bar here, we are not a court with jurisdiction to hear his claim.[6] For these reasons, I respectfully dissent.[7]

---

[6] The majority's willingness to so loosely interpret the newly-recognized constitutional right exception may well arise from an understandable desire to provide relief when a holding that we lack jurisdiction necessarily means appellant will remain incarcerated. Under the majority's approach, appellant is immediately eligible for parole. Majority Opinion at 6. I am nevertheless constrained to conclude the text of the exception cannot support the majority's decision on these facts. However, this is not to say relief is impossible for those in appellant's predicament. For example, appellant could have attempted to properly plead a successful claim based on other exceptions to the PCRA's time-bar. *See, e.g.*, *Commonwealth v. Jones*, No. 1847 EDA 2019, 2021 WL 561404, at *4 (Pa Super. Feb. 12, 2021) (unpublished memorandum) (Pellegrini, J., joined by Nichols, J., concurring) (concluding in similar circumstances that the newly-recognized constitutional right exception did not apply because the petitioner "could not challenge his assault by life prisoner conviction until he received a non-[life without parole (LWOP)] sentence in his juvenile case[,]" but that "[o]nce he received the non-LWOP in his juvenile case, that would constitute a 'newly-discovered fact exception' under subsection 9545(b)(1)(ii)"). In addition, appellant might make a compelling case before the Board of Pardons and the Governor for a commutation of his life without parole sentence. *See* PA. CONST. art. 4, §9. But we should not twist the plain language of Section 9545(b)(1)(iii) to judicially secure for him that remedy.

[7] Given that the majority has written to the merits of appellant's claim, I feel compelled to observe, respectfully, that the majority's substantive analysis is also flawed. The majority posits *Miller*'s holding was deemed a substantive rule in *Montgomery*, *see* Majority

Opinion at 34 ("critical to our analysis in this PCRA appeal, is *Montgomery*'s declaration that *Miller*'s holding constitutes a substantive rule of constitutional law that applies retroactively on collateral review"), but this conclusion is now shaky at best. If the "substantive" nature of *Miller* as articulated in *Montgomery* truly is "critical" to the majority's analysis, then the majority has placed itself between a rock and a hard place. This is because, as discussed *supra* at n.2, the *Jones* Court "[o]verrule[d] *Montgomery* in substance but not in name." 141 S.Ct. at 1327 (Thomas, J., concurring in judgment); *see id.* at 1328 (Sotomayor, J., dissenting) ("Today, the Court guts *Miller* . . . and *Montgomery*[.]").

While it is true, as the majority notes, that the *Jones* Court declared it did not intend to "'disturb *Montgomery*'s holding that *Miller* applies retroactively on collateral review[,]'" it is telling that this statement says nothing about the "substantive" nature of *Miller*. Majority Opinion at 31 n.18, *quoting Jones*, 141 S.Ct. at 1317 n.4. Had the High Court intended to preserve *Montgomery*'s conclusion in this regard, it surely could have — and would have — said so explicitly. Instead, the Court pointedly opined that *Montgomery*'s analysis was "in tension with the Court's retroactivity precedents" and instructed courts not to rely on *Montgomery* to determine "whether rules other than *Miller* are substantive." *Jones* 141 S.Ct. at 1317 n.4. But contrary to the majority's apparent view, *see* Majority Opinion at 31 n.18, neither this statement nor anything else in *Jones* fairly can be characterized as an endorsement of *Montgomery*'s conclusion that *Miller* announced a substantive rule of constitutional law. Rather, the *Jones* Court was careful to highlight the select aspect of *Montgomery* it sought to preserve: "*Montgomery*'s holding that *Miller* applies retroactively on collateral review." *Jones*, 141 S.Ct. at 1317 n.4. Because the High Court did not similarly preserve *Montgomery*'s holding that *Miller* announced a substantive rule of constitutional law, the majority here errs to the extent it expressly relies on *Montgomery* "for the proposition that *Miller* set forth a substantive rule of constitutional law[.]" Majority Opinion at 31 n.18. *See, e.g., Wynn v. State*, __ So.3d __, 2021 WL 2177656 at *9 (Ala. Ct. Crim. App. 2021) (concluding *Jones* "effectively rejected *Montgomery*'s finding that *Miller* announced a new substantive rule of constitutional law"). And without a "substantive" rule to hang its hat on, the majority further errs by concluding appellant's assault by a life prisoner conviction is "not just erroneous, but contrary to law and, as a result, void." Majority Opinion at 32 (internal citation and quotation omitted); *accord Montgomery*, 577 U.S. at 203 (a court generally "has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced"), *citing Ex Parte Siebold*, 100 U.S. 371, 376 (1879). To restate the reason: although *Jones* reflects that the rule recognized in *Miller* is still retroactive, it's no longer because the rule is substantive; and in the absence of some substantive rule of constitutional law that renders appellant's conviction for assault by a life prisoner void, the majority's due process theory fails on its own terms.

Even setting aside all of the problems with the majority's reliance on *Montgomery*, its substantive conclusions are otherwise dubious. Notably, I observe that California has a crime comparable to our assault by a life prisoner statute. *See* CA. PENAL §4500 ("Every

Justice Mundy joins this dissenting opinion.

---

person while undergoing a life sentence, who is sentenced to state prison within this state, and who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death or life imprisonment without the possibility of parole."). And, California has long rejected the very same claims the majority now credits here. *See, e.g.*, *In re Carmichael,* 132 Cal. App. 3d 542, 546 (Ct. App. 1982) ("**Th[e] status of lifer at the time of the assault is what the Legislature was focusing on in attaching the severe penalties which flow from a section 4500 conviction**.  As we have noted, the Legislature was attempting to deter severely violent crime by those who might otherwise think themselves immune from punishment because they were already lifetime guests of the state penal system.  For this reason **it is the prisoner's status on the day of the offense that is crucial.  Thus, a life prisoner may be validly convicted of violating section 4500 even though the conviction under which he became a life prisoner is later declared invalid**.") (emphasis added).  I find California's approach to be more aligned with the text and purpose of Pennsylvania's assault by a life prisoner statute.