**[J-19-2022] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

COMMONWEALTH OF PENNSYLVANIA,

    Appellee

  v.

PAUL G. TAYLOR,

    Appellant

: No. 793 CAP
:
: Appeal from the Order entered on
: June 23, 2021 in the Court of
: Common Pleas, York County,
: Criminal Division at No. CP-67-CR-
: 0001762-1991.
:
: SUBMITTED:  February 7, 2022
:
:

## CONCURRING OPINION

**JUSTICE DOUGHERTY**       **DECIDED: September 29, 2022**

I join the majority opinion in full.  In *Commonwealth v. Koehler*, 229 A.3d 915 (Pa. 2020), the Court described the issue before it as "whether the reinstatement of appellate rights *nunc pro tunc* is an appropriate remedy to correct a constitutional deprivation that occurred in a prior appeal."  *Id.* at 931 n.8.  The *Koehler* majority answered that question in the affirmative over my emphatic dissent.  *Compare id.* at 942 (holding PCRA courts have "inherent authority to grant a *nunc pro tunc* appeal to remedy a due process violation occurring in the prior appeal") *with id.* at 964 (Dougherty, J., concurring and dissenting) ("the *nunc pro tunc* reinstatement of the right to seek reargument is the only lawful remedy for a judicial bias-based due process claim raised on collateral review").  Significantly, though, none of the expressions in *Koehler* said anything about its holding applying retroactively.  This fact singlehandedly defeats Taylor's main claim that *Koehler* satisfies the newly recognized constitutional right exception to the PCRA timebar under 42 Pa.C.S. §9545(b)(1)(iii), as the majority rightly concludes.  *See* Majority Opinion at 13-14 ("Taylor

has failed to establish . . . *Koehler* has been held to apply retroactively as contemplated under Section 9545(b)(1)(iii)[.]") (internal quotation marks, brackets, and citation omitted); *accord Commonwealth v. Abdul-Salaam*, 812 A.2d 497, 501 (Pa. 2002) ("The language 'has been held' [in Section 9545(b)(1)(iii)] . . . mean[s] that the action has already occurred, *i.e.*, 'that court' has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.").

This is not Taylor's only problem though. The majority flags another. It notes that while "neither the PCRA court nor the Commonwealth have addressed" the issue, it could be argued that "*Koehler* did not recognize a new constitutional right" at all, rendering Section 9545(b)(1)(iii) inapplicable for this additional reason. Majority Opinion at 13 n.9; *see id.* ("we are careful to note that we do not treat *Koehler*'s satisfaction of this initial requirement as a foregone conclusion"). Ultimately, the majority does "not reach the issue in light of [its] conclusion [ ] relative to Taylor's failure to demonstrate satisfaction of Section 9545(b)(1)(iii)'s second requirement (*i.e.*, that the right has been held to apply retroactively)." *Id.* While the majority's restraint is reasonable under the circumstances, appellant did place the matter directly at issue, *see* Taylor's Brief at 14 ("*Koehler* is a new constitutional rule"), and since I believe it is unwise for us to leave unanswered a question about whether one of our decisions announced a new constitutional right (even if that right is not retroactive), I would resolve it now.

In his brief, Taylor repeatedly declares *Koehler* announced a new "right" or "rule" (he uses the terms interchangeably, *see, e.g.*, Taylor's Brief at 14, 17), but he noticeably fails to set forth clearly what he believes that right entails. The closest he comes is in a

section titled "*Koehler* is newly recognized law." *Id.* at 17.[1] There, he argues *Koehler* "recognized, for the first time, that PCRA courts have the power to grant new appeals, *nunc pro tunc*, to remedy due process violations flowing from decisions issued by biased appellate tribunals." *Id.* "That newly recognized right[,]" he continues in the next section, "was rooted in the Constitution." *Id.*

Contrary to Taylor's view, *Koehler*'s holding in this regard did not announce a new "right," and certainly not a constitutional one. All *Koehler* did was conclude PCRA courts have "the authority to grant a well-established form of relief" — a *nunc pro tunc* appeal — "to remedy a constitutional deprivation that has been proven on the merits." *Koehler*, 229 A.3d at 929 n.7; *see id.* at 931 n.8 (stating the "straightforward question" is "whether the reinstatement of appellate rights *nunc pro tunc* is an appropriate remedy"). In other words, *Koehler* simply decided the proper **remedy** for a meritorious appellate judicial bias-based due process claim when raised in a timely PCRA petition; it did not purport to recognize a new constitutional right of any kind. I would therefore conclude Taylor's claim also fails on this independent basis.

A third reason for rejecting Taylor's position also warrants discussion. Taylor appears to believe that if *Koehler* were retroactive (or if we were to now hold it is retroactive), it would somehow "revive his claims of judicial bias" that he originally raised in his fourth PCRA petition, the denial of which we affirmed by operation of law in *Commonwealth v. Taylor*, 218 A.3d 1275 (Pa. 2019) (*per curiam*)[2] due to a deadlocked

---

[1] I point out the semantic differences because they matter under the plain language of the PCRA. Section 9545(b)(1)(iii) excuses an untimely claim where the petitioner alleges and proves "**the right** asserted **is a constitutional right** that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively."). 42 Pa.C.S. §9545(b)(1)(iii) (emphasis added). The exception does not mention new "rules" or new "law"; it plainly requires recognition of a new "constitutional right."

[2] In keeping with the majority's designation, I refer to this decision as "*Taylor IV*."

Court. Taylor's Brief at 6. This understanding is wrong. We have explained that just because a petitioner meets his burden to prove a timebar exception with respect to one claim does not mean that endows the PCRA court with all-encompassing jurisdiction to entertain different issues raised in the petition — it merely grants the court jurisdiction over those claims that actually fall within the exception. *See Commonwealth v. Porter*, 35 A.3d 4, 13-14 (Pa. 2012) (Section 9545(b) "speaks in singular terms of 'the claim' or 'the right' which is the subject of a serial PCRA 'petition'" and, as such, the exceptions "are claim-specific"); *Commonwealth v. Fahy*, 737 A.2d 214, 223 (Pa. 1999) ("**claims** must still first satisfy the PCRA's time limits or one of the exceptions thereto") (emphasis added); *see also Commonwealth v. Woods*, 179 A.3d 37, 44 (Pa. Super. 2017) ("if the right announced in *Miller* [*v. Alabama*, 567 U.S. 460 (2012)] applies to any of [a]ppellant's claims, the petition is timely as to that specific claim").

In his fifth PCRA petition, Taylor, citing *Koehler*, raised only the newly recognized constitutional right exception to the timebar. Before this Court, he continues to complain that *Koehler*'s "new constitutional rule . . . has yet to be applied to [his] claims." Taylor's Brief at 14. Again, however, Taylor misunderstands the import of *Koehler*'s holding. It was, at bottom, about remedies. In contrast, what Taylor seeks to do here is use *Koehler* (a case about remedies) to "revive his claims of judicial bias." *Id.* at 6. But the timeliness and merits of Taylor's underlying due process claim are entirely separate from the issue of remedy, and *Koehler* pointedly "offer[ed] no opinion" on those matters. *Koehler*, 229 A.3d at 933. So, for this reason also, even if *Koehler* were retroactive it could not resurrect and make timely the due process claim raised in Taylor's fourth PCRA petition. That claim was untimely for reasons I have previously explained, *see Taylor IV*, 218 A.3d at

1293-95 (Dougherty, J., opinion in support of affirmance), and nothing about *Koehler* changes that either.[3]

This brings me to my last point. It's no secret I believe the majority in *Koehler* went far astray and got things terribly wrong. *See, e.g.*, *Koehler*, 229 A.3d at 946 (Dougherty, J., concurring and dissenting) ("there is no present case and controversy regarding the proper relief that may be afforded to a hypothetical petitioner who presents a meritorious judicial bias-based due process claim in a timely PCRA petition"); *id.* ("everything the [m]ajority purports to do beyond [remand to the PCRA court for a timeliness determination] is entirely advisory and non-binding"); *id.* at 946-47 ("a PCRA court is not authorized, under the Pennsylvania Constitution, to investigate matters of judicial misconduct; or to undo this Court's precedents by means of ordering us to rehear an appeal; or to impose judicial discipline, in the form of retroactive removal from an appellate

---

[3] The dissent credits appellant's assertion he was "'always diligent in pursuing his claims and yet review has eluded him[.]'" Dissenting Opinion at 5, *quoting* Taylor's Brief at 37. It is from this premise that the dissent would apply *Commonwealth v. Cruz*, 851 A.2d 870 (Pa. 2004). *See id.* at 4-5 ("*Cruz* recognizes that when two defendants diligently pursue their claims and are identically situated in terms of pure legal issues they should receive the same treatment."). I must reiterate that the portrayal of Taylor as having been diligent is without foundation considering his fourth PCRA petition was untimely. *See Taylor IV*, 218 A.3d at 1294 n.10 (Dougherty, J., opinion in support of affirmance) ("[Taylor] included within the record the very news articles that definitively prove he did not raise his claim within sixty days of the date the claim could have been presented, as Section 9545(b)(2) requires, and no additional arguments will alter this reality."). Had Taylor timely filed that petition, I would have joined in his request that we grant reconsideration of *Taylor IV* in light of *Koehler*. But since he didn't, there was nothing "inexplicable" about our decision to deny reconsideration. *See Commonwealth v. Taylor*, 230 A.3d 341 (Pa. 2020) (*per curiam*) (Wecht, J., dissenting). Nor is the majority "wrong" for declining to shoehorn this case under *Cruz* when it is nothing like that matter. Dissenting Opinion at 6. To put it bluntly, any fairness concern here is illusory. And I'm not alone in thinking so: the PCRA court, which observed Taylor's "strategems" firsthand, Commonwealth's Brief at 32, took the unusual step of noting in its opinion that it viewed Taylor's fifth PCRA petition and current appeal as nothing more than "a tactic to prolong [his] judgment of sentence." Trial Court Opinion, 8/4/2021 at 1.

panel, for perceived violations of the Code of Judicial Conduct"); *id.* at 949 ("the [m]ajority's entire analysis necessarily presumes an unripe, hypothetical situation where a petitioner files a timely PCRA petition raising a meritorious claim that his due process rights were violated by the participation of a biased jurist in a prior appeal") (emphasis omitted); *id.* at 960 ("[t]he constructs of *stare decisis*, binding authority, and law of the case, which derive at least in part from the judicial hierarchy established by the Pennsylvania Constitution, provide ample bases for rejecting the [m]ajority's position outright"). I maintain this position today.[4]

Regrettably, the Commonwealth in the present appeal has not asked us to overrule *Koehler*. Although I recognize "there have been numerous occasions in which this Court has *sua sponte* reconsidered and overruled prior precedent[,]" *Freed v. Geisinger Med. Ctr.*, 5 A.3d 212, 215 (Pa. 2010), it is my general view that, absent compelling circumstances, "we ought not to overrule prior precedent *sua sponte*, without any request by or advocacy from the parties." *Commonwealth v. Mason*, 247 A.3d 1070, 1083 n.1 (Pa. 2021) (Dougherty, J., concurring). In any event, as I explained in *Koehler*, "by going

---

[4] In fact, *Koehler* is now wrong for the additional reason I alluded to in my partial dissent there: the majority "blatantly misrepresent[ed] what occurred in *Williams* [*v. Pennsylvania*, 579 U.S. 1 (2016)] to support its false narrative that the grant of a *nunc pro tunc* appeal to remedy appellate-level judicial bias claims is a widely sanctioned remedy." *Koehler*, 229 A.3d at 959 n.10 (Dougherty, J., concurring and dissenting). Notably, after we decided *Koehler*, we issued our opinion in *Commonwealth v. Reid*, 235 A.3d 1124 (Pa. 2020), which examined *Williams* at length. *Reid* confirms the majority in *Koehler* gravely misunderstood the import of *Williams* and erroneously concluded "[a]ny other defendant who can establish an unacceptable risk of actual bias in his or her case would be entitled to **the same relief** the High Court deemed appropriate in *Williams*." *Koehler*, 229 A.3d at 934 (emphasis added). *Compare, e.g., id.* at 959 n.10 (Dougherty, J., concurring and dissenting) ("the procedural posture of *Williams* — wherein the Supreme Court of the United States granted **direct review** of former Chief Justice Castille's refusal to recuse — demonstrates only that a higher tribunal is empowered to vacate a lower court's decision when it determines the lower court committed a constitutional violation) (emphasis in original; internal quotation marks and citation omitted) *with Reid*, 235 A.3d at 1131-33, 1162 (corroborating this procedural posture).

out of its way to provide an answer to an academic question 'based on assertions as to hypothetical events that might occur in the future[,]' the [m]ajority render[ed] what is 'clearly an advisory opinion; and such an opinion is without legal effect.'" *Koehler*, 229 A.3d at 946 (Dougherty, J., concurring and dissenting), *quoting Philadelphia Entm't and Dev. Partners, L.P. v. City of Philadelphia*, 937 A.2d 385, 392 (Pa. 2007) and *Okkerse v. Howe*, 556 A.2d 827, 833 (Pa. 1989). This means "courts in this Commonwealth are not bound to follow the [*Koehler* m]ajority's analysis in this regard[.]" *Id.* at 949. Still, as Taylor's arguments here demonstrate, confusion persists regarding the egregiously wrong decision in *Koehler*, and this Court should, at the earliest opportune moment, overrule it.

Justice Mundy joins this concurring opinion.